Re IUE AFL–CIO PENSION
FUND, et al.

v.

LOCKE MACHINE COMPANY, A DIVI-
SION OF U.S. COMPONENTS
CORP., et al.

Civ. A. No. 89–1929.

United States District Court,
D. New Jersey.

Nov. 29, 1989.

Christopher J. Koller, Rosner & Feltman,
P.C., River Edge, N.J., and Ronald E. Rich-
man and Timothy Kebbe, Chadbourne &
Parke, New York City, for plaintiffs.

Mark T. Vuono and Richard R. Wilson,
Vuono, Lavelle & Gray, Pittsburgh, Pa.,

for defendants Locke Mach. Co., David J. Immonen and Glyn H. Jones.

Ronald E. Wiss, Wolff & Samson, Roseland, N.J., for defendant Mary Macauley Whiting.

## OPINION AND ORDER

LECHNER, District Judge.

Plaintiffs, the IUE AFL–CIO Pension Fund (the "Fund") and individually named trustees of the Fund (collectively the "plaintiffs"), bring this action against the defendants, the Locke Machine Company ("Locke Machine") and individually named shareholders and officers of Locke Machine (collectively the "defendants"), for withdrawal liability pursuant to section 4219(c)(5) of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended* 29 U.S.C. § 1001 *et seq.* Presently before the court are the motions of the defendants to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

### Facts

The Fund is an employee pension benefit plan within the meaning of section 3(2) of ERISA, 29 U.S.C. § 1002(2)(A). The individually named plaintiffs are trustees of the Fund and are fiduciaries within the meaning of section 3(21)(A) of ERISA, *id.* § 1002(21)(A). The Fund provides retirement and related benefits to eligible participants and beneficiaries. Richman Aff.,[1] ¶ 3. It maintains its sole office in Bloomfield, New Jersey, from which it adminis-

ters the IUE AFL–CIO Pension Plan (the "Plan"). *Id.*

Locke Machine was a Michigan corporation which engaged in the manufacture of machine parts at its facility in Ohio. Immonen Aff., ¶¶ 1–2. Pursuant to a series of collective bargaining agreements[2] with Local Union No. 687 of the International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC (the "Union"), Locke Machine was required to make monthly payments to the Plan from 1 January 1973 to 30 September 1986. Richman Aff., ¶¶ 4–5.

It appears the only contacts of Locke Machine with New Jersey, prior to the initiation of this action, were the periodic mailing of checks for contributions to the Fund and occasional correspondence with representatives of the Fund regarding liability for contributions. Immonen Aff., ¶ 5. Over half the production of Locke Machine was sold to Bendix Automotive, which had fabricating plants in North Carolina and Michigan; the remainder of production was sold to customers in the Midwest and South. *Id.*, ¶ 3. Locke Machine never conducted business in the state of New Jersey. *Id.*, ¶ 4. It was neither authorized to do business nor maintained any office or representative in New Jersey. *Id.* No customers of Locke Machine were located in New Jersey, although it may have occasionally received bid solicitations from businesses in this state. *Id.*, ¶ 3

On 30 September 1986, Locke Machine terminated its operations and proceeded to sell substantially all of its operating assets.

---

1. In opposition to the motions of the defendants, the Fund submitted a Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Defendants' Amended Motion to Dismiss for Failure to State a Claim and for Lack of Pendent Subject Matter and Personal Jurisdiction, which is referred to as the "Fund Opp. Mem." In addition, the Fund submitted the Affidavit of Ronald E. Richman, which is referred to as the "Richman Aff."

    The defendants have submitted the following briefs in support of their motions: Memorandum of Law in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Def. Mem."), Memorandum of Law in Support of Amended

Motion to Dismiss Complaint ("Def. Amend. Mem."), Defendants' Reply Memorandum of Law in Support of Motion to Dismiss for Lack of Personal Jurisdiction and its Amended Motion to Dismiss for Failure to State a Claim for Lack of Pendent Subject Matter and Personal Jurisdiction ("Def. Reply Mem."). In addition, the defendants submitted the following affidavits: Affidavit of David J. Immonen ("Immonen Aff."), Affidavit of Ray York ("York Aff."), Affidavit of Glyn H. Jones ("Jones Aff.")

2. Counsel for Locke Machine represents these agreements were executed in Ohio. Def. Mem. at 3. Plaintiffs do not take issue with this representation.

Richman Aff., ¶ 5. The proceeds of the sale were distributed to the shareholders pursuant to a vote of the board of directors of Locke Machine. Complaint, ¶ 39.

Also on 30 September 1986, Locke Machine ceased all covered operations under the Plan. *Id.* By letter, dated 26 December 1986, the Fund demanded that Locke Machine begin payments of withdrawal liability on the Plan pursuant to ERISA section 4211(c)(4), 29 U.S.C. § 1391(c)(4). Richman Aff., ¶ 5 & Exhibit 1. The Fund stated it had determined Locke Machine's withdrawal liability to be $258,066. *Id.* Payment was to be made under a schedule of quarterly installments beginning around 1 March 1987. *Id.*

Locke Machine made the first seven installment payments but failed to make the eighth payment due on 1 December 1988. *Id.*, ¶ 6 & Exhibit 2. By letter, dated 8 December 1988, the Fund demanded continuation of payment and notified Locke Machine that it would be in default if the eighth payment were not made within sixty days of the due date. *Id.* Locke Machine apparently did not comply with the demand. Complaint, ¶ 31.

On 3 May 1989, the Fund filed a six-count Complaint in this district claiming Locke Machine and the individually named defendants are jointly and severally liable for the balance of the withdrawal liability payment. The first cause of action articulated in the Complaint asserts Locke Machine [3] is obligated to pay the remainder of its withdrawal liability, alleged to be $148,360.39, plus accrued interest, liquidated damages and attorneys' fees under section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5). Complaint, ¶¶ 19-20, 33-34.

The second cause of action alleges the president, David J. Immonen ("Immonen"), and the board of directors [4] of Locke Machine knew of the withdrawal liability prior to authorizing the sale of assets and distribution of the proceeds of the sale to the Locke Machine shareholders. *Id.*, ¶¶ 20-40. The Fund alleges the distribution of the proceeds constituted a transaction to evade and avoid withdrawal liability within the meaning of ERISA section 4212(c), 29 U.S.C. § 1392(c). *Id.*, ¶ 40. Therefore, the Fund claims the shareholders are jointly and severally liable with Locke Machine for the remainder of the withdrawal liability. *Id.*, ¶ 41. The remaining four causes of action asserted in the Complaint are under the laws of the state of Michigan, where Locke Machine was incorporated.

All the individual defendants were former officers, directors and/or shareholders of Locke Machine. Immonen, a Pennsylvania resident, was the president, the majority shareholder and a director of Locke Machine. Immonen Aff., ¶ 2. Defendant Glyn H. Jones ("Jones"), an Ohio resident, was the vice president and secretary as well as a shareholder and director of Locke Machine. Jones Aff., ¶ 2.

At least one defendant, Ray York ("York"), was neither an officer nor a director of Locke Machine.[5] York Aff., ¶ 2. An Ohio resident, York had no involvement with Locke Machine other than as a passive shareholder of ten shares of Locke Machine stock. *Id.* York received $25.90 upon the dissolution of Locke Machine in December 1986. *Id.*, ¶ 2.

York has no personal contacts with New Jersey. *Id.*, ¶¶ 4-5. Similarly, neither Immonen nor Jones has personal contacts with New Jersey beyond any official involvement they may have had as officers or directors of Locke Machine. Immonen Aff., ¶¶ 6-8; Jones Aff., ¶¶ 4-6. The Fund admits that none of the defendants who

---

**3.** The first cause of action asserts Doe defendants numbered 51 through 75, who are members of the same controlled group as Locke Machine pursuant to 29 U.S.C. § 414, are jointly and severally liable with Locke Machine. Complaint, ¶¶ 19, 35.

**4.** Former directors of Locke Machine are named as Doe defendants 1 through 25. Complaint, ¶ 17.

**5.** The Complaint names approximately thirty defendants, including Immonen, Jones and York, as shareholders of Locke Machine. Complaint, ¶ 15. Immonen is the only defendant singled out from the other defendants in the Complaint as an officer of Locke Machine. *Id.*, ¶ 16.

have responded to the Complaint are residents of New Jersey. Richman Aff., ¶ 9.

At oral argument, counsel for all parties indicated that a majority of the defendants have settled with the Fund or were dismissed. At this point, the only remaining defendants are Locke Machine, Immonen, Jones and Mary Macauley Whiting ("Whiting"), a Michigan resident who received several thousand dollars upon the distribution of Locke Machine's assets. The record contains no further reference to Whiting. York settled with the Fund.

The plaintiffs served process on the individual defendants at their places of residence. *Id.*, ¶ 7. Locke Machine was served at the office of its attorney, Mark T. Vuono, who accepted service.[6] The Fund contends service on all the defendants was made under ERISA's nationwide service of process provision, ERISA section 4301(d), 29 U.S.C. § 1451(d), and Fed.R.Civ.P. 4(c)(2)(C)(ii). *Id.*

Jurisdiction over the Fund's ERISA claims is founded on 29 U.S.C. § 1451(c). The Fund asserts this court has pendent jurisdiction over the state causes of action it alleges arise under Michigan law. Complaint, ¶ 6. In addition, the Fund claims venue in this district is proper under 29 U.S.C. § 1451(d) because the Fund is administered here.

*Discussion*

The threshold issue in this matter is whether this court has personal jurisdiction over the defendants. The plaintiffs argue there is no question as to personal jurisdiction, because the defendants were all served pursuant to the ERISA provision for nationwide service of process. Fund Opp.Mem. at 11. The defendants do not contest the viability of the ERISA provision

for service of process. They argue, however, that they are not "employers" for purposes of actions to collect withdrawal liability under ERISA and, therefore, the plaintiffs cannot rely on the ERISA service of process provision to establish personal jurisdiction. Def.Reply Mem. at 2–4. Moreover, due to the fact that they do not have minimum contacts with this forum, the individual defendants argue the state law claims must be dismissed. Def.Mem. at 14–15.

I. Personal Jurisdiction

■ Ordinarily, a federal court has jurisdiction over the defendant in a civil action only to the extent the law of the state in which that court sits permits the exercise of such jurisdiction. Fed.R.Civ.P. 4(e); *Provident Nat'l Bank v. Federal Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir. 1987); *Eason v. Linden Avionics,* 706 F.Supp. 311, 319 (D.N.J.1989). However, the Federal Rules of Civil Procedure provide:

> Whenever a statute of the United States ... provides for service of a summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute....

Fed.R.Civ.P. 4(e). It is only in " 'the absence of a federal statute authorizing nationwide service of process' " that a court must look to state law to determine the existence of personal jurisdiction. *Dent v. Cunningham,* 786 F.2d 173, 175 (3d Cir. 1986) (quoting *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 295 (3d Cir.), *cert.*

---

**6.** The Richman Affidavit, submitted by the attorney for the plaintiffs, states:

> Prior to initiating the instant suit, I had numerous contacts, both by telephone and by mail with Mark T. Vuono attorney for defendants Locke Machine, David Immonen, Glyn Jones and Ray York, about the location of a potential arbitration proceeding concerning Locke Machine's withdrawal liability.... On each occasion, I informed Mr. Vuono that plaintiffs would only agree to arbitrate this dispute in New Jersey. It was my under-

> standing that Mr. Vuono and I agreed to have this dispute resolved in New Jersey. Although Mr. Vuono disputes that we ever had an agreement to resolve this matter in New Jersey, Mr. Vuono has been fully informed since at least August 1988 that plaintiffs intended to proceed with their claims against Locke Machine in a New Jersey forum.

Richman Aff., ¶ 8. The relevance of this passage to this matter is unexplained. The Fund does not contend Locke Machine has consented to suit in New Jersey.

*denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985)).

### A. *ERISA Nationwide Service of Process*

■ Section 4301(d) of ERISA contains specific provisions authorizing nationwide service of process in actions for withdrawal liability:

> An action under this section may be brought in the district where the plan is administered or where a defendant resides or does business, and process may be served in any district where a defendant resides, does business, or may be found.

29 U.S.C. § 1451(d); *see also* 29 U.S.C. § 1132(e)(2) (authorizing nationwide service of process for delinquent contribution actions under ERISA); *Shlomchik v. Retirement Plan,* 502 F.Supp. 240, 242 (E.D.Pa. 1980), *aff'd mem.,* 671 F.2d 496 (3d Cir. 1981). When Congress has enacted a nationwide service of process procedure such as ERISA section 4301(d), a federal court may exercise personal jurisdiction over a properly served defendant provided the defendant has minimum contacts with the United States. *Max Daetwyler Corp.,* 762 F.2d at 296–97; *Fitzsimmons v. Barton,* 589 F.2d 330, 333 (7th Cir.1979) (citing *United States v. Union Pac. Ry.,* 98 U.S. 569, 25 L.Ed. 143 (1878)); *Briggs v. Goodwin,* 569 F.2d 1, 8–10 (D.C.Cir.1977), *rev'd*

on other grounds sub nom. *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980); *see also Debreceni v. Bru–Jell Leasing Corp.,* 710 F.Supp. 15, 20–21 (D.Mass.1989) (ERISA action); *Combs v. Adkins & Adkins Coal Co.,* 597 F.Supp. 122, 125 (D.D.C.1984) (same); *Combs v. Pelbro Fuel, Inc.,* 4 Employee Benefits Cas. (BNA) 2610, 2611 (D.D.C. 1983) (same); *Shlomchik,* 502 F.Supp. at 242 (same).

In this case, service of process was made under the ERISA nationwide service of process provision as to the defendants in the districts in which they reside. Richman Aff., ¶ 7. The Plan is administered by the Fund in Bloomfield, New Jersey. *Id.,* ¶ 3. Personal jurisdiction therefore appears proper under the plain language of ERISA section 4301(d), *Shlomchik,* 502 F.Supp. at 242, if ERISA is applicable to the individual defendants.

### B. *ERISA Liability of Individual Defendants*

The individual defendants contend ERISA section 4301(d) does not form a basis for the assertion of personal jurisdiction over them because, they argue, officers, directors and shareholders of a defendant corporation are not "employers" within the meaning of subtitle E of Title IV of ERISA, 29 U.S.C. §§ 1381–1461 ("Title VI").[7] If the individual defendants are not "employers" under Title IV, personal juris-

---

**7.** This portion of the defendants' motion must be treated as a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Because Rule 12(b)(6) results in a determination on the merits at an early stage in the plaintiff's cause, the plaintiff is afforded the safeguard of having all of its allegations taken as true and all reasonable factual inferences drawn in its favor. *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *Accord Cruz v. Beto,* 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Angelastro v. Prudential–Bache Sec.,* 764 F.2d 939, 944 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

When making a determination under Rule 12(b)(6), the court cannot consider matters outside the pleadings. In this case, the parties have submitted affidavits in support of their motions to dismiss for lack of *in personam* jurisdiction. When either or both parties present extraneous material as part of their motion or opposition, the court has the discretion to accept the extraneous material and convert the 12(b)(6) motion to one for summary judgment pursuant to Rule 56. *Rose v. Bartle,* 871 F.2d 331, 339–40 (3d Cir.1989); *C. Wright & A. Miller,* 5 Federal Practice and Procedure § 1366 at 678.

Despite the submission of affidavits in this motion, it will not be converted under Rule 12(b)(6) to a motion for summary judgment. The affidavits have been submitted only in connection with the motion of the defendants to dismiss for lack of *in personam* jurisdiction under Rule 12(b)(2) and are accepted only to that extent. The affidavits are not relied on in connection with the defendants' motion to dismiss under Rule 12(b)(6).

diction over them cannot be predicated on the ERISA nationwide service of process provision.

Title IV imposes withdrawal liability on "an *employer* [who] withdraws from a multiemployer plan." 29 U.S.C. § 1381(a) (emphasis added).[8] Title IV, which was not part of the original ERISA statute,[9] does not contain a definition of "employer." *Connors v. P & M Coal Co.*, 801 F.2d 1373, 1376 (D.C.Cir.1986). Accordingly, it is necessary to look to other portions of the statute to determine whether individual officers, directors or shareholders of a defendant corporation are jointly liable with the corporation for Title IV violations.

Title I of ERISA defines an employer as:

any person acting directly as an employer, or indirectly in the interests of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

29 U.S.C. § 1002(5); *Connors*, 801 F.2d at 1376. The Title I definition of "person" includes individuals as well as corporations and other legal entities.[10] 29 U.S.C. § 1002(9).

Locke Machine is unquestionably an employer within the meaning of this definition. However, in the Third Circuit it is settled that the definition of employer in Title I does not include individual corporate officers or shareholders in actions for delinquent contributions under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), and section 515, 29 U.S.C. § 1145. *See Solomon v. Klein*, 770 F.2d 352 (3d Cir.1980).

In the *Solomon* case, the Third Circuit held that an individual, who was the president, chief executive officer and holder of fifty percent of the stock of the defendant corporation, was not personally liable for delinquent contributions of the corporation to a retirement fund which the corporation had formed pursuant to a collective bargaining agreement. *Id.* at 353–54. Absent a reason to pierce the corporate veil, the *Solomon* court found Congress, in enacting ERISA, did not intend to compromise the fundamental principle of corporate law that owners, officers and directors of a corporation have limited liability. *Id.* The *Solomon* court stated:

we find nothing in the legislative history [of Title I] to indicate that Congress intended to impose a personal liability on a shareholder or a high-ranking officer of a corporation for ERISA contributions owed by the corporation.

*Id.* at 354.[11]

The rule of the *Solomon* case has been followed in several circuits. *See, e.g., Rockney v. Blohorn*, 877 F.2d 637, 640–43 (8th Cir.1989); *Scarbrough v. Perez*, 870 F.2d 1079, 1083 (6th Cir.1989); *Int'l Bhd. of Painters v. George A. Kracher, Inc.*, 856 F.2d 1546, 1550 (D.C.Cir.1988); *see also Operating Engineers Pension Trust v. Reed*, 726 F.2d 513, 515 (9th Cir.1984) (sole owner of corporation not liable for delinquent contributions absent evidence allowing court to pierce corporate veil); *Audit Serv. v. Rolfson*, 641 F.2d 757, 764 (9th Cir.1981) (same). These courts have agreed that neither the language of the Title I definition of employer nor its legislative history suggests Congress intended a

---

**8.** The relevant provision states in full:

If an employer withdraws from a multiemployer plan in a complete withdrawal or partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be withdrawal liability.
26 U.S.C. § 1381(a).

**9.** Title IV was added to ERISA by the Multi-employer Pension Plan Amendments Act of 1980 ("MPPA"), Pub.L. No. 96–364, 94 Stat. 1208.

**10.** The definition of person includes: "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, es-

tate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

**11.** The *Solomon* court relied heavily on the reasoning of the district court in *Combs v. Indyk*, 554 F.Supp. 573 (W.D.Pa.1982). In that case, the court determined:

There is no indication that Congress intended to expose corporate officers to liability for their employers' violations of ERISA; in fact, the exclusion of corporate officers from the extensive enumeration of persons points in the opposite direction.
*Id.* at 575.

corporation's liability for delinquent contributions be imputed to shareholders, officers or directors, absent some reason to pierce the corporate veil. *Rockney*, 877 F.2d at 641–422; *Scarbrough*, 870 F.2d at 1083; *Int'l Bhd. of Painters*, 856 F.2d at 1547–48.

Departing from the reasoning of the *Solomon* decision, but reaching a similar conclusion, the First Circuit declined to impose personal liability for delinquent contributions on the sole shareholder and officer of a corporation. In *Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23 (1st Cir.1988), the court stated, without ruling, the legislative history of ERISA supports the interpretation that a shareholder is an employer within the meaning of Title I. *Id.* at 24. However, the *Massachusetts Laborers'* court went on to hold that ERISA imposed contribution liability only on employers " 'obligated to make contributions to an employee welfare plan.' " *Id.* (quoting 29 U.S.C. § 1145). The court held "[al]though [the shareholder's] corporation may have been 'obligated' to make contributions, [he] personally was not." *Id.* at 25.

It is clear the *Massachusetts Laborers'* court upheld the principle of limited liability of corporate shareholders which the *Solomon* court found paramount. Responding to the argument that a literal interpretation of ERISA would limit corporate veil piercing, the *Massachusetts Laborers'* court stated:

> When state law pierces the corporate veil, where the owner is the corporation's alter ego, where state or other relevant federal law makes the owner liable, it is fairly easy to say that the owner *is* the corporation, and that the owner is therefore an "employer" (under ERISA's definition) "who is obligated" (under state or other relevant federal law) "to make contributions to" a pension plan. Indeed, in such a case he is an employer *already obligated* ... to make the contributions. One cannot say that here, where neither state nor other federal law obligates the owner to make the contributions. He is not a person *already obligated* to make the contribution. His would have to be

an obligation that § 1145 of ERISA alone would have to create.

*Id.* at 26 (emphasis in original).

Only one circuit has suggested a corporate official may be personally liable for delinquent contributions without piercing the corporate veil. In *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383 (2d Cir.1989), the Second Circuit held the president of the defendant corporation liable for delinquent contributions despite the finding of the lower court that there was insufficient evidence to pierce the corporate veil. *Id.* at 387. However, in *Leddy*, the president of the corporation had been indicted, along with other corporate officials, for defrauding the pension fund from contributions. *Id.* at 385. The *Leddy* court held:

> ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits.... Shielding from liability a controlling corporate official who ... deliberately flouts ERISA obligations by conspiring to defraud employee pension and welfare plans would surely defeat this legislative purpose. We therefore hold that at least to the extent that a controlling corporate official defrauds or conspires to defraud a benefit fund of required contributions, the official is individually liable under Section 502 of ERISA, 29 U.S.C. § 1132, ... even if the traditional conditions for piercing the corporate veil are not met.

*Id.* at 388 (citations omitted). The *Leddy* court did not address the scope of official liability beyond the circumstances of the facts in that case. *Id.* at 387. Nor did the court reach a conclusion with regard to the definition of an employer under Title I. *Id.* Therefore, because similar circumstances do not exist in this case, the *Leddy* decision is only of limited use here.

The weight of authority clearly establishes individual officers and shareholders are not jointly liable for delinquent contributions of a corporation pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), and section 515, 29 U.S.C. § 1145. Under *Solomon*—the only case discussed which is con-

trolling on this court—there is an exception to this rule where evidence is sufficient to pierce the corporate veil. Under the *Massachusetts Laborers'* and *Leddy* decisions, liability for delinquent contributions may also be imposed where an officer or shareholder is personally obligated to contribute to a fund or has conspired to defraud the fund of contributions.

In this case, the Fund argues the decisions discussed above are distinguishable because they involved claims for delinquent contributions under ERISA section 502, 29 U.S.C. § 1132. Fund Opp.Mem. at 19. This case involves a claim for withdrawal liability under ERISA section 4212(c), 29 U.S.C. § 1392(c). Accordingly, it is contended the individual defendants are personally liable for Locke Machine's withdrawal payments. Moreover, the Fund claims:

> In the instant case, plaintiffs do not contend that the individual defendants should be considered ERISA employers. Rather, plaintiffs allege that the individual defendants are recipients of Locke Machine's assets in a transaction designed to evade and avoid its withdrawal liability.

Fund Opp.Mem. at 19.

The Third Circuit has not addressed whether shareholders are jointly liable with a corporation for withdrawal payments, as contrasted to delinquent contributions. Three appellate courts which have considered the issue have held, however, that shareholders are not liable for withdrawal payments under Title IV absent corporate veil piercing. The first of these decisions was *Connors v. P & M Coal Co.*, 801 F.2d 1373 (D.C.Cir.1986).

In *Connors*, the District of Columbia Circuit analogized the meaning of "employer" under Title IV to the definition contained in Title I. The defendants in that case, sole owners and officers of the defendant corporation, argued they were not included in Title I's definition of an "employer." Therefore, they claimed they were not liable for withdrawal liability of the corporation under Title IV. Relying in part on the interpretation of that definition developed in the *Solomon* case, the *Connors* court stated:

> We find nothing in either the language or purpose of the MPPAA to justify so significant a compromise of the corporate principle of limited liability, nothing to suggest that Congress intended to subject owner-operators of a closely held corporation to personal liability merely because they actively participated in running the business. Acceptance of the district court's "interest.and control" test would not only subvert the major purpose of incorporation, but would discourage future participation in multiemployer pension plans—a result that is clearly contrary to one of MPPAA's stated objectives.

*Id.* at 1376.

The reasoning of *Connors* is parallel to that of the *Solomon* case and its progeny. This similarity is especially evident in a later decision from the District of Columbia Circuit in the *Int'l Bhd. of Painters* case. In that case, the court quoted the same passage of the *Connors* decision quoted above and noted that, although *Connors* was a Title IV case, "*Connors'* determination on the vitality of the doctrine [of individual nonliability for corporate debt] is just as compelling here [under Title I]." 856 F.2d at 1550. The *Connors* and *Int'l Bhd. of Painters* cases thus demonstrate the extent to which the reasoning of *Solomon* may be applied in Title IV cases.

The reasoning of the *Connors* case was followed in *DeBreceni v. Graf Bros. Leasing, Inc.*, 828 F.2d 877 (1st Cir.1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 988 (1988), which also involved a sole owner/operator who claimed he was not jointly liable with the corporation for withdrawal liability. The *DeBreceni* court held:

> The MPPAA does not on its face indicate any intention to treat corporate debts for withdrawal liability different from any other corporate debts. The way that one could have expected Congress to make such an intention felt it was through a definition of the word "employer." Yet Congress did not define the word in the

MPPAA. Nor did Congress provide an applicable definition in ERISA.

Furthermore, the purposes of the MPPAA, as described in the legislative history of that act, would not be served by an extension of personal liability for corporate withdrawal payments.

*Id.* at 880. The disincentive effect of personal liability discussed in the *Connors* opinion provided further justification for the *DeBreceni* court's holding. *Id.* at 880–81.

Finally, in *Scarbrough v. Perez, supra,* the Sixth Circuit, citing *Connors* and *De-Breceni,* refused to impose personal withdrawal liability on the chief executive officer of a corporation who was also the sole owner of its closely held parent corporation. 870 F.2d at 1081, 1084–85. The *Scarbrough* case further illustrated that the definition of "employer" contained in Title I is analogous to the issue under Title IV. The *Scarbrough* court determined the ERISA statute and its legislative history precluded holding the individual defendant liable under Title IV as well as under Title I unless it was possible to pierce the corporate veil. *Id.* at 1083, 1084.

The Fund has not pointed to a single court of appeals decision reaching a contrary conclusion under either Title I or Title IV. The foregoing discussion shows that, whether or not the ERISA definition of "employer" includes individual shareholders of a corporation, the principle of limited corporate liability prevents the plaintiff from proceeding against shareholders for delinquent contributions or withdrawal liability unless there is some reason to disregard the corporate form.

The Fund nevertheless relies on three district court opinions for the proposition that "ERISA Section 4212(c) permits a plan fiduciary to assess withdrawal liability against a company's shareholders and directors even though the shareholders and directors are not subsumed by ERISA's definition of an 'employer.'" Fund Opp. Mem. at 17; *see DeBreceni v. Bru–Jell Leasing Corp.,* 710 F.Supp. 15 (D.Mass. 1989); *Connors v. Marontha Coal Co.,* 670 F.Supp. 45 (D.D.C.1987); *Retirement Ben-efit Plan of Graphic Arts Int'l Union v. Standard Bindery Co.,* 654 F.Supp. 770 (E.D.Mich.1986). None of these decisions is persuasive.

To start, the Fund's reliance on the *De-breceni v. Bru–Jell Leasing Corp.* and *Standard Bindery* cases is simply misplaced. In *Debreceni,* the court expressly stated there was no cause of action under Title IV for withdrawal liability against the holder of ninety-five percent of all the stock in the defendant corporation and granted his motion for summary judgment. 710 F.Supp. at 22 (citing *DeBreceni v. Graph Bros. Leasing, Inc., supra*). In the *Standard Bindery* case, the court did not discuss the relevant legal issue, namely whether corporate shareholders may be held jointly liable for withdrawal payments.

The *Standard Bindery* case was tried without a jury. The court found extensive financial transactions between the family-owned corporation and its shareholders constituted transactions to evade or avoid liability of withdrawal payments. 654 F.Supp. at 773. The court entered judgment against the corporation and the individual defendants, but did not discuss whether such judgment was proper under ERISA. It would be inappropriate to follow the same path, given the extensive history of circuit court opinions dealing with the issue.

Ultimately, the Fund's position is supported only by *Connors v. Marontha Coal Co., supra.* In *Marontha,* the plaintiff fund originally brought its withdrawal liability suit against the defendant corporation and two individual defendants who were owner/officers of the corporation. 670 F.Supp. at 46. The individual defendants were dismissed following the court of appeals decision in *Connors v. P & M Coal Co., supra. Id.* Facing the motion of the plaintiff to amend its complaint to add the individual defendants once again, the district court granted the request to rename the defendants in the complaint but limited relief to the extent the former shareholders had actually received assets of the corporation. *Id.* at 47.

Underpinning the *Marontha* court's reasoning was the concern that the defendants had taken assets out of the corporation with knowledge of the withdrawal liability. The court stated:

> Whenever a transaction has removed assets from the formal structure of the corporation being assessed for withdrawal liability, liability can only be "collected" if there is a right of action against the transferee, whether or not it fits the definition of "employer." If, for example, a defendant company divided itself into two corporations for the purpose of evading the collection of withdrawal liability, liability would undoubtedly be collectible from both new corporations.

*Id.* Similarly, the plaintiffs in this case claim Immonen and the board of directors of Locke Machine knew of its withdrawal liability but distributed the proceeds of the sale of Locke Machine's assets to avoid liability to the Fund.

The *Marontha* court disregarded the portion of the ERISA statute which permits recovery only against an "employer," 29 U.S.C. § 1381(a). *Id.* The court then claimed that ERISA does not state who may be sued in an action to recover withdrawal liability following a transaction to evade or avoid such liability. Rather than looking to ERISA for guidance, as the court of appeals had done in *Connors v. P & M Coal Co.*, the district court referred to the Uniform Fraudulent Transfers Act ("UFTA"), which permits a creditor to sue the transferee of fraudulently transferred property. *Id.* Equating a transaction to evade or avoid withdrawal liability under ERISA with a fraudulent transfer under UFTA, the *Marontha* court permitted the plaintiff to proceed against the former shareholders.

This result is contrary to the line of circuit court decisions since *Solomon* and to the principle of limited liability. ERISA limits liability for withdrawal payments to "employers." Analogizing the ERISA definition to an unrelated statute simply contradicts the meaning of the ERISA definition as developed by circuit court decisions previously discussed. In *Solomon v. Klein, supra*, the Third Circuit expressly rejected an argument that the Title I definition of employer could be interpreted by reference to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq. Solomon*, 770 F.2d at 353. The *Solomon* court stated:

> The method of analogy is, of course, a legitimate method of reaching a decision. But in matters of statutory construction of ERISA our responsibility is to ascertain the intention of Congress in ERISA and not its intention in enacting a separate federal statute.

*Id.* at 354–55. I decline the invitation of the Fund to follow the reasoning of the *Marontha* court.

■ In the instant case, the Fund has not alleged facts which would justify piercing the corporate veil or, for that matter, a finding that the individual defendants engaged in activity approaching a disregard of corporate formality. This case presents none of the factors warranting departure from the *Solomon* rule as suggested by the *Massachusetts Laborers'* and *Leddy* courts. To adhere to the decision in *Marontha* would be to undermine the line of cases dealing with this issue since *Solomon*.

Consequently, the individual defendants are not proper defendants in the ERISA claim for withdrawal liability. The plaintiffs cannot rely on the ERISA nationwide service of process statute to establish personal jurisdiction over the individual defendants in this case.[12] The first and second causes of action in the Complaint must therefore be dismissed, without prejudice, as to the individual defendants.[13]

12. Additionally, dismissal of the federal claims against the individual defendants mandates rejection of pendant jurisdiction over the Fund's state claims against those defendants. Counsel for the Fund admits its "claim for recovery on Michigan state law is entirely dependent on the resolution of plaintiffs' [ERISA] claims." Fund Opp. Mem. at 30.

13. Dismissal of these counts does not preclude the plaintiffs from amending the Complaint or asserting a new cause of action in the transferee district based on new evidence which may be uncovered in discovery.

## C. *Minimum Contacts*

■ The question remains whether there is a basis for personal jurisdiction over the individual defendants with regard to the state law claims articulated in the Complaint. Because the Fund cannot assert personal jurisdiction over the individual defendants under the ERISA nationwide service of process provision, it is necessary to look to the law of New Jersey regarding personal jurisdiction. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 295 (3d Cir.1985) (quoted in *Dent v. Cunningham,* 786 F.2d 173, 175 (3d Cir.1986)).

The New Jersey long arm statute allows out-of-state service as far as is constitutionally permissible under the fourteenth amendment. *DeJames v. Magnificence Carriers,* 654 F.2d 280, 284 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). Federal courts sitting in New Jersey apply New Jersey law when interpreting the meaning of due process for the purpose of *in personam* jurisdiction. *Eason,* 706 F.Supp. at 319; *Western Union Telegraph v. T.S.I.,* 545 F.Supp. 329, 332 (D.N.J.1982).

Minimum contacts with a state are shaped by purposeful conduct making it reasonable for the defendant to anticipate being haled into court there. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 287, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980); *Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 323, 558 A.2d 1252 (1989). These contacts must have a basis in "some act by which the defendant purposely avails itself of the privilege of conducting activity within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted). In this way, the fairness of exercising jurisdiction over a defendant results from a reciprocal relationship between that defendant and the forum state. By exercising the privilege of conducting activities within the forum state, the defendant is put on "clear notice" that it is subject to suit there. *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239–40.

In assessing the sufficiency of minimum contacts for *in personam* jurisdiction, a court must focus upon the "relationship among the defendant, the forum and the litigation." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 1478–79, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977)). The contacts between the defendant and the forum must be judged "in light of the claim," the analysis focusing on whether it is "fair" to compel the defendant to defend in the forum state. *Keeton,* 465 U.S. at 775, 104 S.Ct. at 1478.

After a jurisdictional defense is raised, the plaintiff bears the burden of demonstrating that the defendant's affiliating contacts with the forum state are sufficient to give the court *in personam* jurisdiction. *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 362 (3d Cir.1983). To meet this burden, the plaintiff must establish either the particular cause of action arose from the defendant's activities within the forum state ("specific jurisdiction") or the defendant has "continuous and systematic" contacts with the forum state ("general jurisdiction"). *Provident Nat. Bank,* 819 F.2d at 437 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 434, 416, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984)). If the cause of action is not related to the defendant's contacts with the forum state, the plaintiff must make a stronger showing that the defendant has maintained "continuous and systematic" forum contacts. *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588–89 (3d Cir.1982).

Neither Immonen nor Jones has any of the traditional minimum contacts with the State of New Jersey—ownership of property, advertising or transaction of business, frequent travel to the state. The Fund

merely clouds the issue of personal jurisdiction over these defendants when it points to Locke Machine's contacts with New Jersey by virtue of its periodic contributions to the Fund. The issue is not whether Locke Machine has minimum contacts with New Jersey; Locke Machine is subject to personal jurisdiction here because it is an "employer" under ERISA. The affidavits submitted by Immomen and Jones affirmatively establish the absence of those defendants' contacts with New Jersey. This evidence has not been contradicted by the Fund. The plaintiffs also failed to meet their burden with respect to establishing the existence of personal jurisdiction over Whiting. Therefore, the individual defendants do not have the requisite contacts with and are not subject to personal jurisdiction in New Jersey.

## II. Transfer

█ This finding does not necessitate the dismissal of the action. Even in cases where "the lack of *in personam* jurisdiction is in doubt, sound judicial administration requires transfer to a district where [the action] clearly could have been brought." *Societe Nouvelle Generale v. Kool Stop Intern.*, 633 F.Supp. 153, 155 (E.D.Pa.1985) (citing *Schwilm v. Holbrook*, 661 F.2d 12 (3d Cir.1981)). 28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this section is "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964); *cf. Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 42 (3d Cir.1988).

In this case, dismissal of the state law claims as to the individual defendants would put the plaintiffs in a difficult position: this action would be maintained against a corporation which has no assets, but the remaining claims against the individual defendants would have to be pursued individually. Further, dismissal might create statute of limitations problems as to the state law claims. Thus, the interests of justice favor transfer of this case to a forum where the plaintiffs can proceed against all the defendants, rather than dismissal as to the individual defendants alone.

In *United States v. Berkowitz*, 328 F.2d 358 (3d Cir.), *cert. denied*, 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964), the Third Circuit held that the transferror court need not have jurisdiction over the defendant in order to transfer an action under 28 U.S.C. § 1404(a). *Id.* at 361. The Third Circuit followed the Supreme Court's reasoning in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), which held that a district court need not have jurisdiction over the defendant in order to transfer a case laying venue in the wrong district under 28 U.S.C. § 1406(a). The *Goldlawr* holding with respect to § 1406(a) is equally applicable to § 1404(a), because these are companion sections, remedial in nature, enacted at the same time, and both dealing with the expeditious transfer of an action from one district or division to another. *Berkowitz*, 328 F.2d at 361. Both the Supreme Court and the Third Circuit emphasized the "general purpose which has promoted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Berkowitz*, 328 F.2d at 361 (citing *Goldlawr*, 369 U.S. at 466–67, 82 S.Ct. at 916).

It appears the only defendant subject to personal jurisdiction in this forum is the corporate entity, Locke Machine, the assets of which have been distributed among the shareholders. There is no reason to maintain an action here against the corporation and a parallel action elsewhere against the individual defendants. This course of action would be a hardship on the plaintiffs, who would be forced to litigate related claims in at least two courts.[14]

---

**14.** A plaintiff's choice of forum is entitled to great deference. *Lony v. E.I. DuPont DeNem-* *ours & Co.*, 886 F.2d 628, 633–34 (3d Cir.1989); *Lacey*, 862 F.2d at 45. However, in this case

Counsel for Locke Machine, Immonen and Jones stipulated and represented at oral argument that those defendants would not object to personal jurisdiction and venue in the Northern District of Ohio.[15] That district also appears to be the most appropriate forum for transfer for a number of reasons. It seems Locke Machine, Immonen and Jones are subject to personal jurisdiction in that State. Locke Machine had its principal place of business there, Jones is an Ohio resident and both Immonen and Jones availed themselves of the benefits of the laws of Ohio by acting as officers, directors and shareholders of Locke Machine. Further, counsel represents Locke Machine held its annual and special meetings of Locke Machine in Ohio. The decisions and acts relevant to this dispute—including the votes of the board of directors and shareholders to distribute the assets of Locke Machine to the shareholders—appear to have taken place primarily, if not exclusively, in the Northern District of Ohio.

As to defendant Whiting, counsel was not forthcoming in stipulating to the jurisdiction of the Ohio court. Nevertheless, Whiting was a shareholder of Locke Machine during the time period relevant to this dispute and voted, either in person or by proxy, at meetings in Ohio relating to the sale of Locke Machine's assets. Counsel for Whiting did not contest these facts. Finally, it is apparent that subject matter jurisdiction over the state law claims would be founded on diversity of citizenship, 28 U.S.C. § 1332.[16] Therefore, transfer of the state law claims to the Northern District of Ohio appears appropriate and in the interests of justice.

*Conclusion*

For the reasons stated above, the first and second causes of action are dismissed without prejudice as to the individual defendants and the remaining claims in this action are transferred to the Northern District of Ohio.

SO ORDERED.

counsel for plaintiffs agreed at oral argument that maintaining the action against Locke Machine in this district would be less desirable than transferring it along with the claims against the individual defendants to the Northern District of Ohio.

**15.** At oral argument, counsel for all parties were given the opportunity to comment on the appropriateness and convenience of transfer to either Ohio or Michigan. The decision to transfer to the Northern District of Ohio was made with all relevant representations in mind.

**16.** The question of diversity jurisdiction was raised at oral argument. Although not explicitly pleaded in the Complaint, the plaintiffs were and are given leave to amend their complaint to allege such jurisdictional basis.