**John G. GREEN, et al., Plaintiffs,**

v.

**WILLIAM MASON & CO.,
et al., Defendants.**

No. CIV. A. 96–1730.

United States District Court,
D. New Jersey.

March 5, 1998.

Jay R. Ziegler, Buchalter, Nemer, Fields & Younger, Los Angeles, CA, Ronald S. Beacher, Buchalter, Nemer, Fields & Younger, New York, NY, John K. Sherwood, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, Roseland, for Defendant Imperial Bank.

Robert P. Curley, Markowitz & Richman, Cherry Hill, NJ, for Plaintiffs John G. Green et al.

**OPINION**

WALLS, District Judge.

This matter comes before the Court upon defendant Imperial Bank's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and for failure to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court decides this motion without oral argument. For the reasons that follow, defendant's motion is granted.

*Background*

Plaintiffs in this action are the Trustees of Elevator Constructors Union Local No. 1 Annuity and 401(k) Fund and the Fund itself. The complaint alleges that the investment advisor defendants William Mason & Co ("WMC"), William F. Mason ("Mason"), *et al.*, invested assets of the fund in speculative derivative securities in violation of, *inter alia*, those defendants' fiduciary duties under §§ 404(a)(1) and 405(a)(1) of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §§ 1104(a)(1)(B), (C), (D), §§ 1105(a)(1), (2), (3). Defendant Imperial Bank ("Imperial") is included in this action because, according to plaintiff, "[a]t all times through April, 1993, Imperial employed Mason, owned and operated WMC, had the authority through its employment of Mason to control WMC's general operations, and is thus liable for the actions of Mason and WMC." Compl. at ¶ 14. On the basis of this relationship, the complaint asserts that "Imperial was, through April 1993, a fiduciary with respect to the Fund within the meaning of § 3(21) of ERISA, 29 U.S.C. 1002(21)."

Imperial first moves to dismiss the complaint on the ground that the Court lacks personal jurisdiction over it. Imperial is a California banking corporation with its principal place of business in Inglewood, California. It asserts that it has no contacts whatsoever with the State of New Jersey and that it would therefore be a violation of due process for the Court to assert personal jurisdiction over it in this case. Imperial also asserts that the complaint fails to state a claim upon which relief can be granted because (1) the allegations regarding Imperial's fiduciary status are insufficient as a matter of law to support any ERISA claim; (2) the allegations are similarly defective with regard to the state law claims; and (3) the state law claims are all preempted by ERISA.

*Discussion*

*I. Personal Jurisdiction*

■ Rule 4(e) of the Federal Rules of Civil Procedure provides that service of process upon a defendant is made "pursuant to the law of the state in which the district court is located [...] [u]nless otherwise provided by

federal law." Fed.R.Civ.P. 4(e)(1). ERISA contains such jurisdictional provisions and, in the context of a breach of fiduciary duty claim, provides that an action:

> may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and *process may be served in any other district court where a defendant resides or may be found.*

29 U.S.C. § 1132(e)(2) (emphasis added).

■ Because this section explicitly provides for nationwide service of process, the Court's exercise of personal jurisdiction in an ERISA matter is not constrained by the familiar "minimum contacts" analysis established by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Instead, the prevailing view in this and other circuits is that an assessment of personal jurisdiction under such a statutory provision necessitates an inquiry into the defendant's contacts with the *national* forum. *See e.g., AlliedSignal v. Blue Cross of California*, 924 F.Supp. 34, 36 (D.N.J.1996) (citing cases). As the Third Circuit has explained, "[t]he hallmark of [a national contacts] theory is that it is not the territory in which a court sits that determines the extent of its jurisdiction, but rather the geographical limits of the unit of government of which the court is a part." *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293–94 (3d Cir.1985).

While the Supreme Court has never addressed the constitutionality of an exercise of personal jurisdiction based on national contacts, "all the courts of appeals that have addressed the question have applied a national contacts standard when process is served under an applicable federal service provision." 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.1 at 311 (2d ed.1987). Imperial protests that a national contacts inquiry, without more, is insufficient to satisfy the due process requirements of the fifth amendment. It argues that its contacts with New Jersey must be considered, "if not as the sole test [of due process] than at least as one of several factors." Pl. Br. at 12. The Court does not agree.

At least one of the purposes of the *International Shoe* minimum contacts analysis is to constrain the state courts from reaching beyond the "limits imposed on them by their status as coequal sovereigns in a federal system." *World Wide Volkswagen v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Thus, it is indisputable that "[t]hose strictures of fourteenth amendment due process analysis which attempt to prevent encroachment by one state upon the sovereignty of another do not apply with equal force to the adjudication of a federal claim in federal court." *Max Daetwyler*, 762 F.2d at 294. As the Third Circuit has instructed, the only limitation on Congress' power to empower a plaintiff to sue in his home district is "whatever fairness to the defendant is required by fifth amendment due process." *Horne v. Adolph Coors Co.*, 684 F.2d 255 (3d Cir.1982). The Court is aware that some judges and commentators have struggled to give content to these Fifth Amendment protections.[1] However, the Court does not so labor.

Geography is not the touchstone of fairness. In an age when business is routinely conducted by electronic technology, and air travel brings the two national coasts within hours of each other, state boundaries are less relevant to the determination of fairness.

---

1. *See e.g.,* Charles A. Wright & Arthur R. Miller § 1067.1 at 328 ("[i]f due process is to have any application at all in federal cases—and the fifth amendment requires that it does—it seems impossible that congress could empower a plaintiff to force a defendant to litigate any claim, no matter how trifling, in whatever forum the plaintiff chooses, regardless of the burden on the defendant."); *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 826 (5th Cir.1996) (questioning the propriety of a national contacts analysis, noting that "[r]equiring that the individual defendant in a national service of process case only reside somewhere in the United States does not protect [the individual's liberty interest in avoiding the burden of litigating in an inconvenient forum]"); *Willingway Hosp. v. Blue Cross & Blue Shield of Ohio*, 870 F.Supp. 1102, 1106 (S.D.Ga.1994) ("To say that due process has no place in a personal jurisdiction inquiry seems contrary to the whole concept of due process"); *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 203–204 (E.D.Pa.1974) (setting forth a five-factor test in which the defendant's contacts with the forum is one factor.)

Not constrained by the artificial demarcations of state lines, Fifth Amendment due process seeks merely to ensure that the maintenance of an action in a particular forum will not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. As the Supreme Court has noted, due process "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will or will not render them liable to suit." *World Wide Volkswagen*, 444 U.S. at 297. The ERISA statute satisfies this requirement because parties who engage in any of the covered activities are put on fair notice that they might be called to answer for their actions in any federal court in the United States.

Finding nothing inherently unfair with the exercise of personal jurisdiction over an ERISA defendant on the basis of its national contacts, the Court examines the sufficiency of plaintiffs' allegations against Imperial.

## II. Sufficiency of the ERISA Claims

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). While the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party, *see Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir.1994), "the liberal construction accorded a pleading under Rule 8(f) does not require the courts to fabricate a claim that a plaintiff has not spelled out in his pleadings." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1286, at 558 (2d ed.1990). While a plaintiff need not plead evidence, he must state facts that, if proven, would entitle him to relief. *Sandler v. Eastern Airlines, Inc.*, 649 F.2d 19, 20 (1st Cir.1981).

Plaintiffs allege that Imperial, "had the authority through its employment of Mason to control WMC's *general* operations." Compl. at ¶ 14 (emphasis added). Without offering any specific allegations of Imperial's relation to the Fund, plaintiffs ask the Court to infer that by virtue of its authority, Imperial assumed fiduciary status over the Fund during the period of its ownership of WMC. The Court cannot.

The Third Circuit has instructed that there are three ways by which a party acquires fiduciary status under ERISA:

1) being named as the fiduciary in the instrument establishing the [plan];

2) being named as a fiduciary pursuant to a procedure specified in the plan instrument, e.g., being appointed an investment manager who has fiduciary duties toward the plan; and

3) falling under the statutory definition of fiduciary.

*Glaziers & Glassworkers v. Newbridge Sec.*, 93 F.3d 1171, 1179 (3d Cir.1996). Because plaintiffs nowhere allege that Imperial was named a fiduciary in, or pursuant to, any procedure of the plan, fiduciary liability will not attach to Imperial unless it performed some activity with regard to the Fund that would bring it within the purview of the statute.

Section 3(21)(A) of ERISA provides that:

a person is a fiduciary with respect to a [pension] plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of the plan. . . .

29 U.S.C. § 1002(21)(A).

While the complaint alleges that "[p]ursuant to WMC's agreement with the Trustees, Mason and WMC had the authority, responsibility and discretion to supervise and direct the investment of certain of the Fund's assets without prior consultation with the Fund and its Trustees," Compl. at ¶ 31, it makes no such allegations as to Imperial. Instead, plaintiffs seek to impose ERISA liability on

Imperial solely on the basis of its alleged control of WMC's general operations. Plaintiffs offer no support for the proposition that a parent corporation automatically assumes the fiduciary status of its corporate child. The bald allegations of Imperial's control are insufficient to raise a legal inference that Imperial had attained fiduciary status.

As a general rule, "absent fraud or bad faith, a corporation will not be held liable for the acts of its wholly owned subsidiaries or other affiliates." *New York State Teamsters Conference Pension & Retirement Fund v. Hoh*, 554 F.Supp. 519, 525 (N.D.N.Y. 1982) (citing cases). The Third Circuit has advised that "a rule which imposes liability on a corporation which never exercised its general authority over its subsidiary . . . may unduly penalize the corporation for a decision by that corporation to benefit from one of the well-recognized and salutary purposes of the corporate form: specialization of management." *Lansford–Coaldale Joint Water Authority v. Tonolli Corp.*, 4 F.3d 1209, 1221 (3d Cir.1993) (discussing "operator liability" under CERCLA). Hence, courts ordinarily do not override the "presumption of separateness" unless it be shown that the parent is the "alter ego" of the subsidiary and the subsidiary the "mere instrumentality of the parent." *Hoh*, 554 F.Supp. at 525.

It is true that courts have determined that ERISA's policy goal of protecting employees from inequitable corporate treatment may, under certain circumstances, warrant a relaxation of the deference normally afforded the corporate form. *See e.g., Alman v. Danin*, 801 F.2d 1, 3 (1st Cir.1986) ("deferring too readily to the corporate identity may run contrary to the explicit purposes of the Act"). However, in *Alman*, the First Circuit was specifically concerned with preventing employers from invoking the corporate shield to avoid their financial obligations to employee benefit plans. *Id.* The Court is unaware of any case in which the corporate veil was "pierced" in circumstances such as these. Moreover, even under *Alman*'s less deferential standard, "a finding of some fraudulent

intent is the sine qua non to [veil-piercing]." *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 21 (1st Cir.1998).

Plaintiffs charge no such fraud, nor do they claim that Imperial was the alter ego of WMC or that WMC was the mere instrumentality of Imperial.[2] Under ERISA, a party is a fiduciary only to the extent it possesses or exercises discretionary authority over a benefit plan. 29 U.S.C. § 1002(21)(A); *See also, Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 352 (5th Cir.1989). Viewing the allegations in the light most favorable to plaintiffs, the Court does not find that Imperial's control of the general operations of WMC included specific authority and control over the administration or assets of the Fund. It follows then that the Court cannot infer that Imperial exercised any control over the fund. *See Tonolli*, 4 F.3d at 1222 ("a corporation's 'mere oversight' of the subsidiary . . . in a 'manner appropriate and consistent with the investment relationship' does not ordinarily result in . . . liability"). The ERISA claims against Imperial are dismissed.

### III. Jurisdiction to Hear the Supplemental State Law Claims

In the absence of a viable ERISA claim, the Court's subject matter jurisdiction over plaintiffs' state law claims against Imperial is based upon the parties' diversity of citizenship under 28 U.S.C. § 1332. Because plaintiffs can no longer invoke ERISA's nationwide service of process provision, the Court's jurisdiction over Imperial with regard to the remaining claims is governed by New Jersey law. *See* Fed.R.Civ.P. 4(e); *IUE AFL–CIO Pension Fund v. Locke Machine Co.*, 726 F.Supp. 561, 571 (D.N.J.1989). The New Jersey long-arm statute authorizes personal jurisdiction over an out-of-state defendant whenever constitutionally permissible under the Fourteenth Amendment. *Locke Machine*, 726 F.Supp. at 571. As discussed *supra*, state lines play a significant

---

**2.** Indeed, plaintiffs admit that the "extent of [Imperial's] control and authority needs to be deter-    mined." Pl. Br. in Op. at 23

role in the Fourteenth Amendment jurisdictional analysis.

*International Shoe* and its progeny teach that absent a nationwide service of process provision, a court can exercise jurisdiction only over a defendant who has established certain minimum contacts with the forum state. 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95. A court has no jurisdiction over an out-of-state defendant unless that party has committed some act by which it purposefully availed itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Here Imperial contends that it has none of the traditional minimum contacts with New Jersey and has never purposefully availed itself of the privilege of conducting any activities here. Def. Br. at 16. With this jurisdictional defense, Imperial places the burden on the plaintiffs to present a prima facie case that jurisdiction is proper. *See Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir.), *cert. denied*, 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). To avoid dismissal, plaintiffs must "establish[] with reasonable particularity sufficient contacts" between Imperial and New Jersey to meet the requirements of the fourteenth amendment. *Mellon Bank (East) PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992). Plaintiffs do not meet this burden.

Depending upon the circumstances, a defendant can be subject to either "specific" or "general" jurisdiction in a forum. For a court to have general jurisdiction, the plaintiff must show that the defendant's contacts with the forum state are so "continuous and substantial" that the defendant should expect to be haled into court there on any cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Provident Nat'l Bank v. California Fed. Savings & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987). By contrast, for a court to have specific jurisdiction, fewer contacts need be shown, but the cause of action must "arise[] out of defendant's contacts with the forum." *Mellon Bank*, 960 F.2d at 1221 (3d Cir.1992).

Here, plaintiffs admit that Imperial's contacts with New Jersey are not sufficiently continuous and substantial to authorize "general" jurisdiction over Imperial. Pl. Br. at 15. Instead, plaintiffs argue that the cause of action specifically arises out of Imperial's contact with New Jersey. *Id.* Plaintiffs offer only one affirmative contact to support this claim: Imperial's Internet web site. Plaintiffs contend that through its Internet advertising, Imperial has made itself available to any New Jersey resident with the appropriate equipment. Plaintiffs argue that jurisdiction is proper because in today's world, Imperial's web site and toll-free number are the functional equivalent of a physical office in New Jersey. This argument is both misplaced and unsupported by case law.

First, although plaintiffs argue that the claims against Imperial arise out of the defendant's contacts with the forum, they make no attempt to establish a nexus between Imperial's web site and plaintiffs' retention of WMC as investment advisor for the Fund, or between the web site and WMC's investment of Fund assets in the suspect securities. Instead, plaintiffs' "virtual office" contention is more akin to a general jurisdiction argument. However, courts have found that the maintenance of a passive web site is, in and of itself, insufficient to support the exercise of personal jurisdiction over an out-of-state defendant. *See Weber v. Jolly Hotels*, 977 F.Supp. 327, 333 (D.N.J.1997); *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996). As one court has observed, "a finding of jurisdiction... based upon an Internet web site would mean that there would be nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet web site. Such nationwide jurisdiction is not consistent with traditional personal jurisdiction case law." *Hearst Corp. v. Goldberger*, 1997 WL 97097, at *1 (S.D.N.Y. Feb.26, 1997). Imperial's web site cannot, by itself, support an exercise of jurisdiction under the Fourteenth Amendment. Imperial's motion to dismiss for lack of personal jurisdiction is granted.

*Conclusion*

For the forgoing reasons, the Court concludes (1) that the complaint fails to state a claim under ERISA, and (2) that it does not have personal jurisdiction over Imperial to entertain the remaining claims. Defendant's motion to dismiss the complaint under Rule 12(b)(2) is granted, and the complaint is dismissed as to Imperial.

## ORDER

This matter comes before the Court upon defendant Imperial Bank's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and for failure to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6).

Upon review of the submissions of the parties and for good cause shown, it is on this 5th day of March, 1998.

*Ordered* that *defendant's motion* to dismiss the complaint is *granted.*