**INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES UNION, et al., Appellants,**

v.

**GEORGE A. KRACHER, INC., et al.**

No. 86–5442.

United States Court of Appeals, District of Columbia Circuit.

Argued April 11, 1988.

Decided Sept. 16, 1988.

Barbara L. Camens, with whom David S. Barr and David Johnathan Cohen, Washington, D.C., were on the brief, for appellants.

Timothy J. O'Rourke, Washington, D.C., (appointed by the court), amicus curiae, urging affirmance.

Harry C. Citrino, Philadelphia, Pa., entered an appearance for appellees.

Before WALD, Chief Judge, and ROBINSON and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The sole issue on this appeal is whether under Title I of the Employee Retirement Income Security Act of 1974 (ERISA) as amended,[1] liability for a corporation's delinquent pension contributions extends to an individual who is the organization's chief officer and principal shareholder. In an action asserting and seeking to enforce this responsibility, the District Court answered that question in the negative. Finding no significant indication that Congress intended to alter the fundamental principle of individual nonliability for corporate debt, we affirm.

**I**

George A. Kracher, Inc., a Pennsylvania corporation, was party to a collective bargaining agreement with District Council No. 21 of the International Brotherhood of Painters and Allied Trades (IBPAT), AFL–CIO. The agreement required the corporation to make monthly contributions on behalf of its employees to the IBPAT Union

---

**1.** 29 U.S.C. §§ 1001 *et seq.* (1982).

and Industry Pension Fund.[2] When the corporation defaulted on some of the payment due in 1985, the Fund sued it in an effort to recover the arrearage. Also named as a defendant was George A. Kracher, its chief officer and dominant shareholder.

Neither the corporation nor Kracher appeared in the District Court action, and the Fund moved for a default judgment. It urged that Kracher be held liable both severally and jointly with the corporation on the theory that he was an "employer" as defined in Title I of ERISA.[3] The Fund did not contend that Kracher was the alter ego of the corporation or that the circumstances required piercing the corporate veil. It maintained only that Kracher was personally and directly liable under the provisions of ERISA.

The District Court entered judgment against the corporation but dismissed the claim against Kracher, ruling that he was not an "employer" within the meaning of the statute.[4] This appeal then followed.

## II

Title I of ERISA imposes upon an employer under a contractual duty to pay into a multiemployer pension plan an obligation to make its contributions in a timely fashion. Section 515 provides that

[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.[5]

Clearly, then, the liability created by Section 515 falls solely upon an *"employer ... obligated to make contributions."*[6] Title I of ERISA defines an "employer" as

any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; ... includ[ing] a group or association of employers acting for an employer in such capacity.[7]

The word "person" includes "an individual" and, among other entities, a "corporation."[8]

The Fund argues that Kracher fits within these definitions in that he is "an individual," and as the chief corporate officer and principal shareholder who made all corporate decisions regarding payment of pension contributions, he acted "indirectly in the interest of an employer"—Kracher, Inc. —"in relation to an employee benefit plan."[9] According to the Fund, this "broad statutory language" is evidence of a congressional intent to include dominant corporate owners and officials within the scope of employer liability for delinquent contributions.[10] The Fund also relies upon a bit of the legislative history:

It is intended that the coverage of the Act be construed liberally to provide the maximum degree of protection to working men and women covered by private retirement programs. Conversely, exemptions should be confined to their narrow purpose.[11]

This canon of liberal construction, along with the characterization of ERISA as a comprehensive remedial statute designed to protect workers' pension rights, leads the Fund to conclude that Congress intend-

---

**2.** The Fund is a multiemployer employee pension benefit plan within the meaning of ERISA. *Id.* § 1002(2)(A)(i), 37(A) (1982).

**3.** *Id.* § 1002(5).

**4.** *International Bhd. of Painters & Allied Trades Union & Indus. Pension Fund v. George A. Kracher, Inc.*, Civ. No. 85–3316 (D.D.C. May 28, 1985) (judgment), Record Excerpts 46.

**5.** 29 U.S.C. § 1145 (1982).

**6.** *Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 24

(1st Cir.1988) (emphasis added); *Solomon v. Laranne Sportswear Corp.*, 648 F.Supp. 407, 409 (E.D.N.Y.1986).

**7.** 29 U.S.C. § 1002(5) (1982).

**8.** *Id.* § 1002(9).

**9.** Brief for Appellant at 9.

**10.** *Id.*

**11.** S.Rep. No. 127, 93d Cong., 1st Sess. 18 (1973).

ed to extend liability to corporate officers such as Kracher. We disagree.

Neither the plan nor the collective bargaining agreement contains any provision tending to impose personal liability on Kracher. Only the corporation, as signatory to the agreement, fits within the parameters of Section 515 as the "employer who is obligated to make contributions ... under the terms of" either the plan or the agreement. Nor do the statutory definitions of "employer" and "person" supply the necessary link between liability and Kracher individually. It cannot be said that a corporate official is a "person acting directly as an employer." It is hornbook law that a corporate employee functioning purely as such acts not *as* but solely *for* the corporate employer; the corporation acts as the employer it is, though it can do so only through the agency of the employee or someone else. Moreover, we think it would be foolhardy to consider Kracher as one who "act[ed] indirectly in the interest of an employer." Such an expansive reading would mean that every employee or other agent who discharges some responsibility in regard to a corporation's employee benefit plan would be swept within the definition and thereby become an "employer" subject to liability for delinquent contributions.[12] Obviously Congress did not contemplate that.

### III

The Fund says, however, that the difficulties to which we have adverted could be ameliorated by incorporating an "economic reality" test into the definition of "employer."[13] This would mean that individual liability would be imposed only when a corporate officer has a substantial ownership interest and has actually exercised operational control over a corporate matter underlying the statutory violation—here, nonpayment of pension contributions. The Fund asserts that congressional intent for such an outcome can be derived by analogizing ERISA to the Fair Labor Standards Act (FLSA),[14] in connection with which the caselaw employs an economic reality test in determining liability for unpaid wages.[15] The Fund notes that the two statutes have similar definitions of employer and that both are instances of remedial social legislation serving the purpose of protecting employee compensation—FLSA in regard to workers' wages, and ERISA with respect to employee benefit plans. Because of the close resemblance of congressional purposes and statutory definitions, the Fund contends that FLSA caselaw interpreting employer liability should be followed under ERISA, and that corporate owner-officers should be held personally liable for overdue pension contributions just as they would be for unpaid wages under FLSA.[16]

The Fund argues that while importation of the economic reality test into Title I of ERISA would seal Kracher's liability, it would not result in automatic penetration of the corporate veil. Rather, individual liability would accrue only when the individual targeted has a substantial ownership interest in the corporation and actual control over matters precipitating nonpayment

---

**12.** See *Combs v. Sun–Up Coal Co.,* 634 F.Supp. 13 (D.D.C.1985), which applied the statutory definition of employer in a withdrawal liability case. *Combs* posited an example that would reasonably fall within the quoted language. The court noted that in the garment industry a contractor is generally the common law employer of employees covered under its plan, but that a manufacturer or jobber dealing with the contractor often has the obligation under its own collective bargaining agreement to contribute to the plan on the basis of the contracted-for work. *Id.* at 15 n. 5. The statutory language is conducive to application to a separate business entity, but not to a corporate officer or shareholder.

**13.** Brief for Appellant at 15–21.

**14.** 29 U.S.C. §§ 201 *et seq.* (1982).

**15.** See *Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983); *United States v. Stanley,* 416 F.2d 317 (2d Cir.1969); *Donovan v. Grim Hotel, Inc.,* 747 F.2d 966 (5th Cir.1984), *cert. denied,* 471 U.S. 1124, 105 S.Ct. 2654, 86 L.Ed.2d 272 (1985); *Chambers Constr. Co. v. Mitchell,* 233 F.2d 717 (8th Cir.1956).

**16.** See *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.,* 635 F.Supp. 9 (D.Mass.1984); accord, *Rubenstein v. Tri–State Transp.,* 646 F.Supp. 1 (D.Mass.1984).

of pension contributions.[17] We decline, however, the Fund's invitation to travel the path it would lead us down.

First, and perhaps most significantly, there is no indication that Congress intended to incorporate FLSA caselaw into ERISA's definition of "employer." When ERISA was enacted in 1974, it defined "employer" exactly as it does today, but at that time it conferred no statutory remedy for delinquencies in contributing. A cause of action therefor did not become available under the Act until passage of the Multiemployer Pension Plan Amendment Act of 1980 (MPPAA).[18] It is impossible to read into a definition of "employer" adopted in 1974 any congressional purpose to specify essential elements of a statutory right of action for recovery of unpaid contributions that did not exist until 1980.

There is also a significant difference between the operation of ERISA and FLSA, respectively. ERISA does not require employers to provide pension plans; the obligation to do so, and to contribute to them, springs from a privately-made contract embodied in a plan or a collective bargaining agreement. FLSA, however, commands employers to pay specified wages. This fundamental deviation, together with the complete absence of evidence that Congress had in mind the interpretation urged upon us by the Fund, constrains us to reject the notion that FLSA caselaw should be assigned a role in the context of Title I of ERISA.

Even without analogy to FLSA, the Fund maintains, there is enough of a manifestation of congressional intent in the enactment of Section 515 to indicate that liability was to extend to dominant corporate owners and officers. The Fund attempts to brace this position by referring to Congress' concern about delinquent contributions and their serious impact on the financial stability of employee pension funds.[19] We find the argument unpersuasive. The legislative history discloses that Section 515 was added to ERISA to simplify litigation over unpaid contributions, not to expand the universe of potential defendants. The Senate sponsors of that provision stated that

> [r]ecourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly, and complex litigation concerning claims and defenses unrelated to the employer's promise and the plan's entitlement to the contributions. This should not be the case.[20]

Similarly, the staff of the Senate Committee on Labor and Human Resources explained the reason for amending ERISA by adoption of Section 515:

> The public policy of this legislation to foster the preservation of the private multiemployer plan system mandates that provision be made to discourage delinquencies and simplify delinquency collection. The bill imposes a Federal statutory duty to contribute on *employers that are already contractually obligated to make contributions* to multi-employer plans. . . . The intent of this section is to promote the prompt payment of contributions and assist plans in recovering the cost incurred in connection with delinquencies.[21]

---

17. See *Donovan v. Agnew, supra* note 15, 712 F.2d at 514 (FLSA case) ("we review the liability of corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment").

18. Pub.L. No. 96–364, 94 Stat. 1208, 29 U.S.C. § 1001, *et seq.* (1982).

19. Brief for Appellant at 12–15.

20. 126 Cong.Rec. 23,288 (1980) (remarks of Sens. Williams and Javits); see also *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 86–87, 102 S.Ct. 851, 861, 70 L.Ed.2d 833, 846 (1982).

21. Staff of Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., *S. 1076— The Multi-Employer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration,* 44 (Comm.Print Apr. 1980) (emphasis added).

We are unable to equate these statements of congressional purpose with an indication of congressional intent to hold corporate owners and officers liable for corporate failure to remit contributions owing to employee pension plans. There is nothing in the legislative history that suggests that Congress meant to expand that liability beyond parties who in a plan or collective bargaining agreement obligated themselves to make those contributions. In this case, that party is the corporation itself.

## IV

Limited liability is a hallmark of corporate law. Surely if Congress had decided to alter such a universal and time-honored concept, it would have signaled that resolve somehow in the legislative history. We may usefully recall what quite recently in *Connors v. P & M Coal Co.*[22] we announced:

> We find nothing in either the language or purpose of the MPPAA to justify so significant a compromise of the corporate principle of limited liability, nothing to suggest that Congress intended to subject owner-operators of a closely held corporation to personal liability merely because they actively participated in running the business. Acceptance of the district court's "interest and control" test would not only subvert the major purpose of incorporation, but would discourage future participation in multiemployer pension plans—a result that is clearly contrary to one of MPPAA's stated objectives.[23]

*Connors* held that corporate owner-officers were not personally liable under the withdrawal liability provisions of ERISA. Nonetheless, though *Connors* involved Title IV withdrawal liability rather than Title I delinquent-contribution liability, the doctrine of individual nonliability for corporate debt poses the same limitation for each. *Connors'* determination on the vitality of the doctrine is just as compelling here.

The same conclusion has been reached in sister circuits. The Third, in *Solomon v. Klein,*[24] declared that it could "find nothing in the legislative history to indicate that Congress intended to impose a personal liability on a shareholder or a high-ranking officer of a corporation for ERISA contributions owed by the corporation."[25] Other circuits echo that view.[26] As we said in *Connors,* abrogation of the fundamental principle of corporate limited liability will "require more than an expansive interpretation of a definition."[27] We hold that liability for delinquent pension contributions under Section 515 of ERISA does not extend to an individual corporate owner or officer.[28]

The judgment of the District Court is AFFIRMED.

---

**22.** 255 U.S.App.D.C. 334, 801 F.2d 1373 (1986).

**23.** *Id.* at 337, 801 F.2d at 1376.

**24.** 770 F.2d 352 (3d Cir.1985).

**25.** *Id.* at 354.

**26.** *Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp., supra* note 6;

*Operating Eng'rs Pension Trust v. Reed,* 726 F.2d 513 (9th Cir.1984).

**27.** 255 U.S.App.D.C. at 338, 801 F.2d at 1377.

**28.** We stress again that this case involves no claim of alter ego or conduct that might result in the necessity to pierce the corporate veil.