Stanley L. CHES, as Successor Trustee of the Ramco Steel, Inc. Retirement Plan and Joseph R. Jindra, James T. Krywalski and Sukyi Wolentarski, for themselves and all other persons similarly situated, Plaintiffs,

v.

Frank ARCHER, Jerry D. Hobbs and Raymond Rozanski, Defendants.

No. 88–CV–0433E(M).

United States District Court,
W.D. New York.

July 9, 1993.

**162**

William E. Grande, Buffalo, NY, for plaintiffs.

Robert J. Feldman, Buffalo, NY, for defendants.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

A trustee and three participants of the Ramco Steel, Inc. Retirement Plan ("the Plan") brought this suit against three former officers and shareholders of the now bankrupt Ramco–Fitzsimons, Inc. ("Ramco") under section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and section 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking recovery of unpaid contribution funds allegedly withheld from the Plan in violation of ERISA and the collective bargaining agreement ("the cba") between Ramco and the United Steelworkers of America, Local 2248 ("the Union"). Presently before this Court are the defendants' motion for summary judgment or partial summary judgment and to strike the plaintiffs' jury demand, and the plaintiffs' cross-motion for summary judgment. The motions will be denied.

■ The plaintiffs' contention in this action is that Ramco wrongfully failed to remit timely to the Plan Ramco's contribution funds for the years 1980 through 1982 and has yet to remit funds for the years 1983 through 1985. In the first cause of action they allege that the defendants breached their fiduciary duties by failing to collect and remit the required contributions timely, by failing to notify the participants of the delinquency, by deliberately concealing the same and by profiting from such nonpayment. In the second cause of action, the plaintiff-trustee claims that the defendants—as officers and the largest shareholders of Ramco—were the employers as defined by ERISA and thus are personally liable for the unpaid contributions. The Complaint prays for an order compelling payment of all unpaid contributions and for other equitable relief pursuant to section 502(a)(3)(B) of ERISA, 29 U.S.C. § 1132(a)(3)(B), and section 301 of LMRA, 29 U.S.C. § 185, and for damages for emotional distress and pain and suffering.

Presently the defendants move for a summary judgment dismissing both the first and the second causes of action. With respect to the second cause of action—the claim for the

defendants' "employer liability"—, the defendants argue that as individual officers and shareholders they should not be held personally liable for the corporation's failure to pay contributions absent circumstances that warrant disregarding the corporate form and that no such ground for veil-piercing has been put forth by the plaintiffs. The defendants note that, although an "employer" is obligated to make contributions under Article IV of the Plan, such term is specifically defined in section 1.8 of the Plan as meaning "Ramco Steel, Inc."—not the officers and shareholders thereof. *See* The Plan, Defendants' Exh. 2.[1] The defendants further point out that they were not parties to the Basic Labor Agreement in that such was entered into by Ramco and the Union.

Although the United States Court of Appeals for the Second Circuit has yet to demarcate the area of individual liability for corporate ERISA obligations, *Sasso v. Cervoni*, 985 F.2d 49, 51 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993), those appellate courts in other circuits that have examined the question have held that the definition of "employer" in section 1002(5) does not encompass individual officers, directors or shareholders of an employer corporation and have refused to impose personal liabilities where there is no basis for piercing the corporate veil. *Rockney v. Blohorn,* 877 F.2d 637, 641–643 (8th Cir.1989); *Scarbrough v. Perez,* 870 F.2d 1079, 1082–1084 (6th Cir.1989); *Intern. Broth. of Painters v. George A. Kracher,* 856 F.2d 1546 (D.C.Cir.1988); *Solomon v. Klein,* 770 F.2d 352 (3d Cir.1985). *See also Solomon v. R.E.K. Dress,* 670 F.Supp. 96, 99 (S.D.N.Y. 1987). ERISA defines "employer" as "any person acting directly as an employer, or indirectly in the interest of the employer, in relation to an employee benefit plan * * *," 29 U.S.C. § 1002(5), and, in turn, "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated orga-

nization, association, or employee organization," 29 U.S.C. § 1002(9). These courts have reasoned that, absent a clear indication of congressional intent to expose officer-shareholders to personal liability for the corporate employer's ERISA violations, there should be a reluctance to disregard the principle of limited liability which is the cornerstone of corporate practice. *See, e.g., Intern. Broth. of Painters v. George A. Kracher,* 856 F.2d at 1550. They have concluded that the omission of "officer-shareholder" from the extensive enumerations of "person[s]" who constitute the "employer" under ERISA indeed suggests the Congress's intent not to impose such individual liability. *See, e.g., ibid.* In light of the overwhelming weight of the authority limiting such imposition of personal liability, this Court finds unconvincing the plaintiffs' unsupported assertion that this Court should "make its own determination" to the contrary.

However, the United States Court of Appeals for the Second Circuit has recognized special circumstances that warrant the imposition of personal liability on corporate officers. In *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383 (2d Cir.1989), it was held "that at least to the extent that a controlling corporate official defrauds or conspires to defraud a benefit fund of required contributions, the official is individually liable under Section 502 of ERISA, 29 U.S.C. § 1132, * * * even if the traditional conditions for piercing the corporate veil are not met." *Id.* at 388. The Court reasoned that "[s]hielding from liability a controlling corporate official who * * * deliberately flouts ERISA obligations by conspiring to defraud employee pension and welfare plans would surely defeat [the] legislative purpose" of ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Ibid.*

---

1. "Defendants' Exh." denotes an item from "Exhibits in Support of Defendants' Motion for Summary Judgment Dismissing the Plaintiffs' Amended Complaint or, in the Alternative, Partial Summary Judgment," filed May 20, 1992. Similarly, an item from the plaintiffs' "Exhibits in Support of Motion for Summary Judgment or, in the

Alternative, Partial Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment and to Strike Jury Demand," filed August 21, 1992 will be expressed as "Plaintiffs' Exh."

■ Here, contrary to the defendants' assertion that there is no allegation of fraud, the Amended Complaint alleges:

"The Defendants failed to notify the participants that the required contributions had not been collected and remitted to the Plan, and they did not seek a waiver pursuant to applicable law relieving them of the obligation to remit said contributions. In fact, the Defendants caused a statement to be issued to the participants in approximately May 1984 which indicated that the 1983 contribution had been made. Upon information and belief, the Defendants' actions in this regard were an attempt to fraudulently conceal the fact that the required contributions had not been made." Amended Complaint, filed May 18, 1989, ¶ 25.

The statement referred to in the Amended Complaint is the individual statement of account as of December 31, 1983 distributed to the participants in the Spring of 1984. The statement showed, under the column titled "12/31/83 Fund Balance," amounts that included the amounts of contributions for the plan year 1983, ostensively implying that such contributions had already been made to the fund. *See* Statement of Account as of December 31, 1983, Plaintiffs' Exhs. Z and AA. The plaintiffs claim that, as a result of such fraud, the participants did not learn until July 1985 that the company was delinquent in its contributions to the Plan. *See* Affidavit of Stanley L. Ches in Support of Motion for Summary Judgment (sworn to August 18, 1992); Affidavit of Joseph Benbenek in Support of Motion for Summary Judgment (sworn to August 20, 1992). In essence it is the plaintiffs' assertion that the defendants have evaded payment of the contributions by deceiving the participants—*i.e.,* by issuing misleading statements of account which had caused the participants to believe that such payment had already been made, by deliberately failing to correct such misconception and by concealing their failure to make timely contribution. This Court finds that such fraud, if proved, can provide a basis for imposition of personal liability on the defendants as controlling corporate officials who defrauded or conspired to defraud participants through non-payment of required

contributions. *See Leddy v. Standard Drywall, Inc.,* 875 F.2d at 388.

In their responding memorandum of law, the defendants argue that no fraud could have been committed by them because (1) the statements to which the plaintiffs refer were prepared not by the defendants but by The Johnson Companies, "a nationally recognized independent pension management and administration firm," (2) the statements "apparently" were prepared on an accrual basis as of December 31, 1983 and (3) the contributions to the Plan were completely current, the next contribution—that for plan year 1982—being due on April 15, 1984 and the 1983 contribution not being due until sometime in 1985. The defendants further claim that defendant Hobbs—in response to union officials' inquiries, upon the issuance of the statement, why the rate of interest earned in 1983 appeared not to correspond properly to the December 31, 1982 fund balance—had explained to the officials on a number of occasions that the statements had been prepared on an accrual basis and that a portion of the fund balance—the accrued contributions that were not yet due—had not been paid into the plan. In support the defendants point to a letter dated June 18, 1984 from The Johnson Companies to Martin Szarek, one of the original plaintiffs in this action, which reads in part:

"At your request, I have been instructed by Jerry Hobbs to respond to you regarding the interest earned under the above plan for 1983. Please note that the rate of return allocated to participants was as follows:

1976 and Prior Year Account 8%

1977 and Current Year Account 7.75%"

Affidavit of Robert J. Feldman in Support of Defendants' Motion for Summary Judgment, etc. (sworn to January 24, 1992), Exh. A.

The defendants contend that such letter, together with an affidavit of Hobbs, proves that "not only was the interest calculation and the fact that a portion of the accrued benefit showing on each individual's statement and unpaid accrual disclosed to the union officials, this was verified by the union

in direct correspondence with The Johnson Companies under direction by Defendant Jerry Hobbs that The Johnson Companies respond to the union's inquiries." Defendants' Reply Memorandum of Law, filed September 24, 1992, at 16–17. This Court disagrees and finds that there are issues of material fact regarding the existence *vel non* of the fraud alleged by the plaintiffs—*viz.*, whether the statements of account had been misleading and, if so, whether the defendants had advised the beneficiaries the true status of the contribution payments.

Next, the defendants request the dismissal of the plaintiffs' first cause of action alleging breaches of fiduciary duties.

█ Firstly, the defendants contend that the Plan vested its fiduciaries with broad discretion in its administration—in particular, with regard to deferral of the contribution requirement [2]—and, therefore, that they cannot be found to have breached their fiduciary duties in the absence of an allegation and a showing that their determinations had been arbitrary and capricious. The defendants maintain that such application of the deferential standard of review is supported by *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), which, they contend, stands for the principle that the plan instrument controls the degree of discretion afforded to trustees in their administration of a plan and, thereby, the standard of review the courts exercise over trustees' decisions. In *Firestone* it was held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the standard of review

should be arbitrariness and caprice. *Id.* at 115, 109 S.Ct. at 956. However, the discussion in *Firestone* was expressly limited to the appropriate standard of review in actions challenging denials of benefits based on plan interpretations, *id.* at 108, 109 S.Ct. at 953, and its holding therefore does not encompass the present case wherein the fiduciaries' failure to enforce the contribution payments agreement is challenged. ERISA requires that all fiduciaries discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries and * * * with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims * * *." 29 U.S.C. § 1104(a). It is this "prudent man" standard of care, rather than the deferential arbitrary and capricious standard, that is applicable in the instant case. The Plan's language, insofar as it is inconsistent with the ERISA provision, is to be disregarded in considering the fiduciary standard under ERISA. *See* 29 U.S.C. § 1104(a)(1)(D). Application of ERISA's prudent man standard of care in the case at hand comports with prior judicial decisions. In evaluating fiduciaries' administration of ERISA plans, courts have typically applied the stricter, statutory standard of care, limiting the applicability of the more lenient, arbitrary and capricious standard only to cases where the legality of the trustees' benefit determination was at issue. *Struble v. N.J. Brewery Emp. Welfare Trust Fund*, 732 F.2d 325, 333 (3d Cir.1984); *Trapani v. Consolidated Edison Emp. Mut. Aid Soc.*, 693 F.Supp. 1509, 1515 (S.D.N.Y.1988). The use of the different standards of review in these

---

**2.** Section 8.2 of the Plan provides in part:

"The Trustees shall have the exclusive power to interpret the provisions of the Plan and to decide any and all matters arising thereunder or in connection with the administration of the Plan. In exercising such powers, the Trustees shall have complete discretion and their decisions shall be final." The Plan, Defendants' Exh. 2.

Further, Section 9.3 of the Plan states in pertinent part:

"The Trustees shall have the following powers and authority in the investment and administration of the Trust Fund which they may exercise in their absolute discretion:

* * * * * *

"(c) To compromise, settle, or submit to arbitration any debt or obligation due to or from them as Trustees hereunder and to reduce the rate of interest on, to extend or otherwise modify, or to foreclose upon default or otherwise enforce any such debt or obligation;" *Ibid.*

cases reflects the different nature of the issues presented in each type of suit:

"In actions by individual claimants challenging the trustees' denial of benefits, the issue is not whether the trustees have sacrificed the interests of the beneficiaries as a class in favor of some third party's interests, but whether the trustees have correctly balanced the interests of present claimants against the interest of future claimants. * * * In such circumstances it is appropriate to apply the more deferential 'arbitrary and capricious' standard to the trustees' decisions." *Struble v. N.J. Brewery Emp. Welfare Trust Fund,* 732 F.2d at 333.

Here the plaintiffs' claim is that the defendants have neglected their duties to collect and remit the required contributions to the Plan. To the extent that such claim implicates the defendants' failure to observe the participants' valid interests in the Plan, this Court finds the statutory prudent person standard to be controlling. *See Kowalewski v. Detweiler,* 770 F.Supp. 290 (D.Md.1991) (ERISA's prudent man standard, and not arbitrary and capricious standard, applied in action not involving denial of benefits).

■ Secondly, the defendants argue that it is undisputed that, at a meeting in July or August of 1985, Ramco and the Union reached an agreement to allow the delinquent contributions to be paid over a three-year period commencing in late 1985 or early 1986. The defendants rely on the following deposition testimonies:

"Q. Did the union respond to that request [pension payback over three years] after the July 16 meeting?
"A. Yes.
"Q. What was [the union's] response?
"A. I think our response was that we would have been favorable to it if the company would stay in business." Deposition of Stanley L. Ches, Defendants' Exh. 23, at 102.
"Q. Okay. Do you recall if when that proposal was made, the union responded to it?

"A. I believe we said, you know, not a definite response at that time. I think we were receptive more or less to the idea because we were at least going to recoup some of the moneys." Deposition of Joseph R. Jindra, Defendants' Exh. 21, at 101.
"Q. Okay. Do you recall what the union's final position or response was to the company's proposal to catch up on pension in arrears over three years?
"A. I don't believe we ever got that far to give them a final response. I believe the Chapter 11—or 7 went through and then the 11 before we ever finalized anything.
"Q. Did the union discuss that proposal internally?
"A. Oh definitely.
"Q. What was that discussion?
"A. As far as funding over it, we could almost go over, we made our counterproposals. As far as the concessions, we were willing to accept that three-year pay back." *Id.* at 119.

In response, the plaintiffs point out that the defendants' evidence falls far short of even suggesting that any agreement for deferral had been reached between the parties and submit the union representative's affidavit stating that the Union had never entered into any such agreement—Affidavit of Joseph Benbenek in Support of the Plaintiffs' Motion for Summary Judgment (sworn to August 20, 1992)—thus successfully creating a triable issue of material fact—*viz.,* whether such agreement had indeed been made—and precluding summary disposition. The defendants nevertheless argue that the fiduciaries cannot be said to have breached their duties because, in light of the ongoing negotiations, it cannot be tenably argued that they should have immediately pursued the past-due contributions. However, according to the plaintiffs, the negotiations had broken down in August 1985—two months before Ramco's bankruptcy. *See* Benbenek Affidavit, ¶ 10. The defendants fail to explain why the trustees' inaction for two months cannot as a matter of law constitute a breach of their fiduciary duties.[3]

**3.** Further, the defendants do not account for failure of the alleged trustees—who, also as offi-

Thirdly, the defendants argue that the filing of a grievance by the Union had rendered superfluous any suit by a trustee against Ramco and that the defendants' decision not to bring such a duplicative action therefore could not constitute a breach of fiduciary duties. On or about July 1, 1985 plaintiff Jindra, Vice President of the Union, on behalf of all its members filed a grievance claiming that the Plan was not properly funded and demanding that Ramco "conform immediately to the funding of employees pension and conform to any and all federal laws and regulations regarding pensions." Concise Statement of Material Facts in Support of Defendants' Motion for Summary Judgment, filed May 20, 1992, ¶ 35. Ramco thereafter acknowledged that it was in violation of the cba in that it had not yet funded the 1983 plan year pension contribution, which funding had been due by April 15, 1985. *Id.* ¶ 37. Thereupon, the Union had the right to seek binding arbitration on the grievance and then to have the arbitration confirmed as a judgment against the company. *Id.* ¶ 36. The defendants argue that the plaintiffs' first cause of action in essence claims that the fiduciaries neglected their obligations by failing to sue Ramco to collect overdue pension contributions because, according to the defendants, the only power which the Plan's trustees have to enforce payment of contributions by an employer was the power of suit under 11 U.S.C. § 1132(a)(3). Such a suit having been redundant and futile, the defendants conclude, there could be no breach of fiduciary duties. However, trustees have a variety of options in attempting to recover delinquent contributions—"including suing the delinquent employer, randomly auditing the employer's records, threatening work stoppages, picketing the employer, or similar actions—depending upon the circumstances." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 917 (2d Cir.1989). Considering these options and then deciding not to sue the employer may well have constituted a prudent judgment. *Id.* at 918. However, the record here is devoid of any showing that such consideration was ever had and that such decision was ever made by the

cers of Ramco, may have been aware of the nonpayment—to enforce the contribution agree-

fiduciaries. The trustees had a duty to investigate the possibility of a lawsuit and other options and to make an informed decision whether to pursue any. Failure to do so—even with the Union's grievance pending—would, if proved, represent a breach of such duty.

Lastly, the defendants argue that the plaintiffs' claims relating to the contributions for plan years 1984 and 1985 should be dismissed because the trustees were automatically stayed from taking any action to collect such contributions, which had not been due as of the date Ramco filed its bankruptcy petition. The plaintiffs do not dispute the applicability of the automatic stay under 11 U.S.C. § 362(a) to collection actions against Ramco. However, they claim that the trustees' breach lies not in their failure to sue Ramco for the 1984 and 1985 contributions, but in their total abdication of the responsibilities as the Plan's fiduciaries despite the availability of several options they had to protect the participants' interests—for instance, ensuring proper filing of proof of claims, distribution of existing assets to the beneficiaries, or filing of suit against the ten largest shareholders of the corporation under section 630 of New York's Business Corporation Law. The plaintiffs further point to the defendants' letters of December 5, 1985, each of which states: "If I am an administrator, trustee, or fiduciary for any benefit plan or trust of [Ramco] * * *, I hereby resign. My resignation is effective on November 14, 1985 or on the earliest date permissible under the plan or trust." Resignation Letters of Frank Archer, Jerry Hobbs and Raymond Rozanski, dated December 5, 1985, Plaintiffs' Exhibits A, B and C. Such evidence can indeed provide a basis for the plaintiffs' allegation in the first cause of action—*viz.*, that, not only did the defendants fail to consider their options prudently, but entirely renounced their responsibility by their premature resignations.

In their cross-motion for summary judgment, the plaintiffs argue firstly that all of the defendants were fiduciaries with re-

ment prior to July 1985 when the negotiations started.

spect to the Plan. It is undisputed that Hobbs, a named trustee of the Plan, was a fiduciary. With respect to Archer and Rozanski, the plaintiffs maintain that they also were fiduciaries even though they were not formally named as trustees. The defendants concede that Archer and Rozanski owed fiduciary duties to the Plan but contend that such duties existed only to the extent that they acted in the role of fiduciaries with respect to the Plan, thus leaving for the Court's review the scope of the two officers' fiduciary duties. ERISA defines "fiduciary" as follows:

"[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, * * * or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Courts commonly have liberally interpreted such term, honoring the desire of the Congress to expand the scope of fiduciary standards of conduct in the ERISA context. A formal appointment as a trustee is not a prerequisite to the finding of fiduciary liability under ERISA—*Donovan v. Mercer*, 747 F.2d 304, 309 (5th Cir.1984)—and, in determining whether an individual or entity is an ERISA fiduciary, the focus of the inquiry is on the function performed, rather than on the title held. *Blatt v. Marshall and Lassman*, 812 F.2d 810, 812 (2d Cir.1987). Thus, a plaintiff may establish a corporate officer's fiduciary status for ERISA purposes by specifying which of the functions enumerated in the statute were performed or to be performed by the officer. *Ibid.* Activities that have been held indicative of fiduciary status include signing documents as trustees, *Donovan v. Mercer*, 747 F.2d at 309, transferring

plan assets, *ibid.*, and assuming responsibility for informing employees about a plan, *Monson v. Century Mfg. Co.*, 739 F.2d 1293 (8th Cir.1984). Here the plaintiffs claim that Archer and Rozanski engaged in activities that were consistent with their roles as fiduciaries of the Plan.[4] In particular, the plaintiffs assert (1) that both Archer and Rozanski signed corporation signature cards for Time Certificates of Deposit with regard to the investment of the Plan's assets as "Trustees" (Plaintiffs' Exh. BB), (2) that Rozanski was identified as a trustee in the correspondence between himself and Phoenix. Mutual Life Insurance Company, a pension investment advisor[5] (Plaintiffs' Exhs. CC through JJ), (3) that Rozanski has had discussions with retiring employees concerning the benefits under the Plan (Deposition of Raymond Rozanski, Plaintiffs' Exh. J at 113–115) and (4) that, in a letter to a union representative regarding freezing of the payout of benefits, Archer stated, "We believe that the [proposed action] is consistent with fiduciary obligations under the Plan and in the interest of all plan participants and beneficiaries." (Plaintiffs' Exh. V). However, ERISA imposes fiduciary status on a corporate officer only to the extent that the officer exercises discretion or actual control over a plan, *District 65, UAW v. Harper & Row, Publishers, Inc.*, 670 F.Supp. 550, 555 (S.D.N.Y.1987), and, as Justice Frankfurter once observed, "to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligations does he owe as a fiduciary?" *Securities Corp'n v. Chenery Corp.*, 318 U.S. 80, 85–86, 63 S.Ct. 454, 458, 87 L.Ed. 626 (1943). Here, while the activities listed by the plaintiffs indeed are indicative of the defendants' fiduciary status, they fail to address the essential question—*viz.*, the extent, if any, of the discretion and actual control Archer and Rozan-

---

**4.** The plaintiffs also argue that the defendants should be held responsible as fiduciaries because the Plan specifically imposes fiduciary responsibility on "the employer." However, as already noted, the Plan's definition of "employer" is "Ramco Steel Inc.," not officers or shareholders thereof. The plaintiffs do not allege any further or other basis for finding the defendants to be the "employer" for the present purpose.

**5.** In one epistle—which appears to be a duplicate copy of a letter from Rozanski to the insurance company—Rozanski identifies himself as a "Trustee." Plaintiffs' Exh. GG. In other letters—which were sent by the insurance company to Rozanski—the insurance company addresses Rozanski as a "Trustee." Plaintiffs' Exhs. CC through FF, HH through JJ.

ski have exercised in the administration of the Plan—that must be answered before imposing fiduciary liabilities.

The plaintiffs next contend that the defendants breached their duty of loyalty under section 404(a)(1) and violated the anti-inurement provision of section 403(c)(1) by placing themselves, and continuing to function, in a position where it was impossible for them to act with complete loyalty to the Plan's participants.[6] The United States Court of Appeals for the Second Circuit has spoken as follows:

"Although officers of a corporation who are trustees of its pension plan do not violate their duties as trustees by taking action which, after careful and impartial investigation, they reasonably conclude best to promote the interest of participants and beneficiaries simply because it incidentally benefits the corporation or, indeed, themselves, their decisions must be made with an eye single to the interests of the participants and beneficiaries. * * * This, in turn, imposes a duty on the trustees to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan." *Donovan v. Bierwirth,* 680 F.2d at 271.[7]

The plaintiffs assert that, once the corporation was in financial trouble, the defendants' conflict of interest was so great that it was impossible for the officers/trustees to continue in both capacities without breaching their fiduciary duties. By their failures to appoint a neutral trustee and to resign, the plaintiffs allege, the defendants violated their duty not to derogate their loyalty to the beneficiaries. *Donovan v. Bierwirth* suggests two avenues for the analysis of conduct of trustees with dual loyalty. *See Leigh v. Engle,* 727 F.2d 113, 125 (7th Cir.1984) (explaining *Donovan*). The first approach addresses situations presenting a strong conflict of interest. Where an officer/trustee clearly has substantial career and financial interests conflicting with a plan's beneficiaries, the Court noted it may be almost impossible for him to discharge his duties solely in the beneficiaries' interest and the fiduciary may need to step aside, at least temporarily, from the management of the plan wherein he faces the conflicting interests and for the duration of the event that is creating the conflict. *Donovan v. Bierwirth,* 680 F.2d at 271–272. Thus, the Court stated *in dictum* that resignation was "perhaps" the only proper course the officer/trustee of the target company could have taken during a takeover battle initiated by a hostile tender offer. *Id.* at 276. The second approach—which concerns cases wherein the conflicts may be substantial—involves a broader inquiry into the fiduciaries' conduct, especially their investigation of the alternatives open to them. The *Donovan* Court observed:

"[The trustees] should have realized that, since their judgment on this score could scarcely be unbiased, at the least they were bound to take every feasible precaution to see that they had carefully considered the other side, to free themselves, if indeed this was humanly possible, from any taint of the quick negative reaction characteristic of targets of hostile tender offers * * *, and particularly to consider the huge risks attendant on purchasing additional [shares of the target company] at a price substantially elevated by the tender offer." *Id.* at 276.

In the case at hand, the plaintiffs urge this Court to invoke the first approach—namely, imposition of liability on the defendants for their failures to resign upon the manifestation of a substantial conflict of interest. This Court disagrees. When an officer of a sponsoring corporation also acts as a trustee of a plan, there exists inevitably an innate disharmony between the two competing roles, for

---

**6.** The plaintiffs claim that such conduct also violated section 406(b)(1) of ERISA, which prohibits transactions between a plan and a party having an adverse interest. However, the United States Court of Appeals for the Second Circuit has rejected a broad interpretation of section 406 and has required that there be a "transaction" for the provision to be violated. *Donovan v.*

*Bierwirth,* 680 F.2d 263, 270 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). Here, no such transaction having been alleged, the section is inapplicable.

**7.** See footnote 6, *supra.*

the individual is in effect pledging one's loyalty both to the obligor and to the obligee of a single arrangement. However, despite the dual loyalty and the potential of conflict of interest, ERISA does not preclude the officer from serving as the trustee and provides that a person may serve as a fiduciary in addition to being an officer, agent or other representative of an employer. *See District 65, UAW v. Harper & Row, Publishers, Inc.*, 670 F.Supp. at 557. This of course does not grant the officer a license to engage in conduct in disregard of the beneficiaries' interest, and a fiduciary remains subject to the substantive requirements of the ERISA provisions. *See Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir.1978). But it does imply that some quantum of conflict of interest attendant on the assumption of the dual capacity does not, in and of itself, constitute a violation of ERISA and that an officer/trustee in such a situation is allowed to justify one's determinations by demonstrating that they comport with ERISA's substantive requirements. *See ibid.* In *Donovan* the officers/trustees of the target company had an additional, significant interest of their own in the context of the outcome of the corporate control—namely, their immediate concern about holding onto their jobs. *See Leigh v. Engle*, 727 F.2d at 127. In such a situation, the United States Court of Appeals for the Second Circuit strongly implied that the trustees should have stepped aside after they had actively engaged in the campaigns opposing the tender offer, for it then was almost impossible to act without bias—*i.e.*, to vote to tender or even to sell that plan's stock—no matter how compelling the evidence for the taking of one or the other of the courses might have been. *Donovan v. Bierwirth*, 680 F.2d at 276. Here, in contrast, the conflicting interests the defendants had to face—their interest as corporate officers to keep the company afloat and the interest as fiduciaries to keep the Plan fully funded—were of the nature that is inherent in the officers' assumption of dual capacity, at least to the extent of the difficulty of assuming the roles of both payor and payee of the fund. Further, unlike the situation in *Donovan*, the officers' interest in keeping the company solvent was not wholly independent

of the Plan's beneficiaries' interest, in that it also served the participants' interest to keep the Plan's sponsor in business. Nonetheless, the plaintiffs maintain that the first prong of *Donovan* should be applied because "[i]t is undisputed in this case that the Company was having financial difficulty at least since 1982" and "[d]uring this period, the Defendants were focusing on what they could do to save the Company." Memorandum in Support of Plaintiffs' Motion for Summary Judgment, filed August 21, 1992, at 26–27. Corporate officers' dedication in saving their company during a financial crisis may significantly hinder their ability to act as plan trustees and, under certain circumstances, may indeed render untenable their assertion of their adequacy as fiduciaries. However, what the plaintiffs fail to allege and to demonstrate here is the clear and substantial conflicting interest that is comparable to that faced by the trustees in *Donovan* and of such a magnitude that it rendered virtually impossible their acting loyally for the benefit of the Plan's participants. The plaintiffs' assertion—namely, that the defendants' focus on the company's survival had caused the delinquency in the contribution—still leaves this Court with the essential question of fact whether there had come a point when the conflicting interests virtually precluded the defendants from making decisions as trustees that would justify the invocation of the first prong of *Donovan's* standard.

 With regard to the plaintiffs' additional claims that the defendants engaged in a course of conduct violating fiduciary duties—*viz.*, (1) failure to notify the Plan's participants of the delinquencies of the contributions for the years 1982 and 1983, (2) issuance of statements inaccurately describing the funding status, (3) payment of vacation pay to themselves in 1985, (4) full payment to employees retiring between 1983 and 1985, (5) resignation in December of 1985 without making provision for the continued administration of the Plan and (6) failure to establish a funding policy for the Plan—there exist issues of material fact that require further inquiry before liability can be imposed for the purported violations.

Finally, the defendants move to strike the plaintiffs' jury demand. In this circuit, the courts have typically denied requests for jury trials in ERISA cases alleging violations of fiduciary duties, for such claims, arising under law of trusts, are deemed essentially equitable in nature. *See Reeves v. Continental Equities Corp. of America*, 767 F.Supp. 469, 474 (S.D.N.Y. 1991). With regard to their first cause of action alleging fiduciary breach, the plaintiffs are not entitled to a trial by jury. However, contrary to the defendants' assertion that none of the claims raised in the Complaint can be deemed legal in nature, the plaintiffs' second cause of action for the delinquent contributions is such inasmuch as it seeks remedies for breach of the collective bargaining agreement. As such, it is triable to a jury. *See Bugher v. Feightner*, 722 F.2d 1356 (7th Cir.1983), *cert. denied*, 469 U.S. 822, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984).

Accordingly, it is hereby **ORDERED** that the defendants' motion for summary judgment or, in the alternative, partial summary judgment and to strike jury demand is denied and the plaintiffs' cross-motion for summary judgment is denied.