UNITED STATES of America, ex rel.

Joseph T. SIEWICK, Plaintiff,

v.

JAMIESON SCIENCE AND
ENGINEERING, INC.,
et al., Defendants.

No. CIV.A.920045–LFO.

United States District Court,
District of Columbia.

Feb. 4, 2002.

18

Joseph J. Aronica, Porter, wright, Morris & Arthur, Washington, DC, Robert Brewer Norris, Washington, DC, for plaintiff.

William Harris Carroll, Dykema Gossett, Washington, DC, Mitchell I. Batt, Sullivan & Talbott, Rockville, MD, Gary Howard Simpson, Bethesda, MD, for defendants.

## *ORDER*

OBERDORFER, District Judge.

The Estate of Dr. John A. Jamieson ("the Estate") moves to reconsider, or in the alternative, to alter or amend, the July 27, 2001 Order which denied its motion for summary judgment. The July 27 Order determined that the question of whether the Estate's decedent was plaintiff's "employer" within the meaning of the wrongful termination provision of the False Claims Act, 31 U.S.C.A. § 3730(h), was not susceptible to resolution by summary judgment, but turned on an issue of fact to be decided by a trier of fact. The Estate invites attention to the recent decision of our Court of Appeals in *Yesudian ex rel. United States v. Howard Univ.,* 270 F.3d 969 (D.C.Cir.2001), which clarifies—more by what it does than by what it says—that the question of whether an individual defendant is an "employee" as that term is used in § 3730(h) is legal rather than factual. I am persuaded that *Yesudian* requires reconsideration of the July 27 Order. On reconsideration, I am further persuaded that the material facts are undisputed (viewed in light of *Yesudian* ), that the issue is a legal one, and that the Estate is now entitled to summary judgment that the decedent was not plaintiff's employer within the meaning of § 3730(h).

To recapitulate briefly, plaintiff Dr. Joseph T. Siewick alleges that Jamieson Science and Engineering, Inc. ("the company") and the decedent, Dr. John A. Jamieson,[1] wrongfully terminated his employment for "blowing the whistle" on improprieties in the company's billing practices for government contracts, in violation of § 3730(h) of the False Claims Act. That section provides redress for employees who are fired or suffer other retaliation as a result of protected activity:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in

---

1. The Estate was substituted as a defendant    on January 6, 2000.

an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. 31 U.S.C. § 3730(h).

■ The term "employer" is not defined in the statute. Plaintiff seeks to hold both the company and the Estate liable as employers. A core holding of *Yesudian* is that, as a matter of law, the word "employer" in the context of § 3730(h) "does not *normally* apply to a supervisor in his individual capacity." 270 F.3d at 972 (emphasis added). The *Yesudian* court analogized the issue there to those decisions in this and other circuits analyzing individual liability under Title VII, 42 U.S.C. § 2000e(b). That statute defines "employer" to include "any agent" of an employer. *See* § 2000e(b). Nonetheless, the D.C. Circuit and all other circuits to have considered the issue have held that Title VII's definition of an employer does not include a supervisor in his individual capacity. *See* 270 F.3d at 972 (*citing, e.g. Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.1995)). In light of the exclusion of an individual defendant as "employer" as a matter of law under Title VII's relatively broad statutory definition of the term, the *Yesudian* court found the "inference of coverage" of extending the meaning of "employer" under § 3730(h) to include an individual supervisor as an employer to be, as a matter of law, "farfetched and in flat contradiction of *Gary.*" 270 F.3d at 972.

Decedent was the plaintiff's supervisor. The July 27 Order emphasized that fact, *id.* at 1–2, pointing out that decedent, himself a skilled expert in the field of infrared physics, was the only individual at the company capable of comprehending and overseeing plaintiff's highly technical work. To the extent that *Yesudian* precludes charging a supervisor with responsibility as an "employer" under the False Claims Act, it seriously undercuts the reasoning of the July 27 Order, which relied on the decedent's active role in supervising the plaintiff as a substantial, virtually controlling, factor in determining that an issue of fact existed as to whether the decedent was plaintiff's employer.

The formalities of the corporate form, as well as the allegations in plaintiff's complaint, require the conclusion that the defendant company, Jamieson Science and Engineering, Inc., was *an* employer of plaintiff. Could there have been more than one employer in a corporate setting? The plain language of the statute provides some guidance: the key word "employer" is in the singular. Moreover, § 3730(h), unlike its Title VII counterpart, makes no reference to any liability for agents of a corporation. If the drafters of the False Claims Act intended liability in a corporate setting for multiple employers, they could easily have said so. Other provisions of the False Claims Act, for example, include a broader class of potential defendants. *See, e.g.*, 31 U.S.C. § 3729(a)(3) (imposing liability on "*any person* who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid") (emphasis added); *see also id.* at § 3729(a)(1) (imposing liability on "*any person* who knowingly presents, or causes to be presented to ... the United States Government ... a false or fraudulent claim for payment or approval") (emphasis added); *cf. Int'l Bhd. of Painters and Allied Trades Union v. George A. Kracher, Inc.*, 856 F.2d 1546, 1550 (D.C.Cir.1988) (Spottswood Robinson, J.) ("Limited liability is a hallmark of corporate law. Surely if Congress had decided to alter such a universal

and time-honored concept, it would have signaled that resolve somehow in the legislative history.").[2] Nothing in the text or legislative history of § 3730(h) indicates a Congressional intent to treat as an "employer" an individual superior of an "whistle-blower" employee of a corporation.

■ The next step in this analysis is to consider whether *Yesudian* draws a legal distinction between a "mere supervisor," who, in his or her individual capacity, lacks the power to provide the remedies available under § 3730(h), such as reinstatement, *see* 270 F.3d at 972, and a superior in decedent's position, who possessed the power to make hiring and termination decisions. As structured, the *Yesudian* decision first considers and rejects the inclusion of an individual supervisor in the statutory meaning of "employer," and only then, as an apparent afterthought, states in *dicta* that the remedies available under § 3730(h) support its determination that an individual supervisor cannot be held liable as an "employer" for the wrongful termination of a subordinate. Decedent's prominent role at the company does not provide a basis for distinguishing this case from *Yesudian*. The opinion defines "employer" by statutory interpretation, not on the facts of the case. Even if the reference to a supervisor's inability to provide the remedies provided by statute for a wrongfully terminated employee were not considered *dicta*, decedent as an individual would not be an employer within the meaning of § 3730(h). Although decedent had broad authority over the affairs of the corporation and made hiring and firing decisions, he was, in the absence of circumstances warranting pierc-

ing of the corporate veil, *see supra*, acting as an agent of the corporation. "It is hornbook law that a corporate employee functioning purely as such acts not *as* but solely *for* the corporate employer; the corporation acts as the employer it is, though it can do so only through the agency of the employee or someone else." *Kracher*, 856 F.2d at 1548 (emphasis in original). Any action taken by decedent to reinstate the plaintiff would have been taken on behalf of the corporation.

The ultimate question remains: whether on the undisputed facts here, decedent can be considered to be an alter ego of the company, and therefore an "employer" for purposes of § 3730(h). Although the legislative history of the False Claims Act as amended does not specify when it is appropriate for a court to "pierce the corporate veil" and hold an individual officer or executive liable, it does make clear that the law is designed to serve a broad, remedial interest in preventing fraud against the federal government. *See generally* S. Rep. 99–345 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266. Although the law of the state where a corporation is incorporated, or where the alleged corporate wrongdoing occurred, normally dictates whether the corporate veil should be pierced, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal common law governing the veil-piercing question is applicable to cases where "some federal interest is implicated by the veil-piercing inquiry." *United States Through the Small Bus. Admin. v. Trotter*, 731 F.2d 8, 12 (D.C.Cir.1984). The government's interest in protecting itself from fraud, as embodied in the False

---

**2.** The analysis in the *Kracher* decision is helpful but not controlling, because it is heavily linked to the language and legislative history of ERISA, rather than the False Claims Act. *See* 856 F.2d at 1547 ("Clearly, then, the liability created by Section 515 falls solely upon an '*employer* ... obligated to make contributions.' "); *see also Connors v. P & M Coal Co.*, 801 F.2d 1373, 1376 (D.C.Cir.1986) (discussing legislative history and Pension Benefit Guarantee Corporation interpretations of ERISA).

Claims Act, makes it reasonable to apply the federal common law standard for piercing the corporate veil instead of the test set forth by the state courts in Maryland, where the company is incorporated.[3]

■ Turning to the federal common law of veil-piercing, I am persuaded from undisputed facts and circuit precedent that decedent's status as a majority shareholder and corporate officer is not sufficient to require a disregard of the corporate structure and conclude he was individually liable as plaintiff's employer. "[I]t has long been the clearly stated rule in this circuit that the existence of a sole and controlling shareholder does not alone justify invoking the alter ego doctrine." *In re Capitol Hill Healthcare Group*, 242 B.R. 199, 204 (Bankr.D.C.1999) (*quoting Valley Fin., Inc. v. United States*, 629 F.2d 162, 171–172 (D.C.Cir.1980)). No different result is required here, despite decedent's supervisory role *vis-à-vis* plaintiff.

■ Our Court of Appeals employs a two-prong test to determine whether federal common law supports piercing the corporate veil: "(1) is there such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist?; and (2) if the acts are treated as those of the corporation alone, will an inequitable result follow?" *Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C.Cir.1982).[4]

The separate identities of decedent and the company plainly were intact. Indeed, the Estate's Statement of Material Facts Not in Dispute states, without material contradiction and with supporting affidavits, that the corporation's board of directors was duly elected, met regularly, maintained minutes, and was governed by a majority vote. There were six directors, three of whom were outside directors—an attorney in private practice, a businessman who owned his own company, and an individual who owned his own consulting firm and served on a number of other boards. It was financially solvent during the entire time that plaintiff was an employee. The corporation met its payroll for the company's eleven employees, awarded bonuses, and maintained an employee profit-sharing plan.

Plaintiff and the July 27 Order relate the decedent's ownership of 85% of the stock of the corporation, his titles as chairman and president, and his close supervision of employees, particularly the plaintiff. Plaintiff has also alleged that on one occasion the board awarded decedent such a large bonus that a government audit required him to disgorge a portion of it. Although these factors are relevant, when considered in light of the undisputed facts, no reasonable trier of fact could fail to find that at all relevant times the corporation was an intact, going concern, separate from decedent and therefore impervious to

**3.** Although the outcome in this case would be the same, regardless of whether the decedent's liability were analyzed under federal common law or Maryland law, there are differences between the two legal regimes. *See Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md.App. 294, 728 A.2d 783, 790–791 (1999) ("Although ... federal cases are persuasive authority ..., our discussion ... demonstrates that Maryland is more restrictive than other jurisdictions in allowing a plaintiff to piece a corporation's veil.").

**4.** The test was more recently formulated as whether: "(1) have the shareholder and the corporation failed to maintain separate identities? and (2) would adherence to the corporate structure sanction a fraud, promote injustice, or lead to an evasion of legal obligations?" *Bufco Corp. v. Nat'l Labor Relations Bd.*, 147 F.3d 964, 969 (D.C.Cir.1998) (NLRB test derived from federal common law).

piercing on any theory that it was the decedent's alter ego or a "mere facade" for his personal activities. *Labadie Coal Co.,* 672 F.2d at 97.

As for the second prong, refusal to pierce the corporate veil does not sanction a fraud, promote injustice, or lead to evasion of legal obligations. *See Bufco,* 147 F.3d at 969. As plaintiff points out, fraud, in the form of alleged violation of the False Claims Act, is a central to this case. However, for purposes of piercing a corporate veil, defrauding the federal government as alleged is not the same as defrauding a corporation's shareholders, and only the latter is sanctionable through the piercing of a corporate veil. "The difference between being a fraud and conducting one is important. Even a fully-capitalized, Fortune 500 corporation can embark on a fraud, but that would not make its corporate form a sham or its shareholders personally liable." *U.S. v. Andrews,* 146 F.3d 933, 940 (D.C.Cir.1998). Plaintiff has not alleged that any other inequity would result from maintenance of the corporate form.[5] There is not now any issue as to whether the Estate, as a "person," might be liable to the United States for any fraud. *See* 31 U.S.C.A. § 3729(a)(1) and (a)(3). A previous order has determined that the Estate is not liable for violations of the False Claims Act brought by or on behalf of the government. *See* April 5, 2001 Order and Memorandum. It is also not liable to the plaintiff under § 3730(h).

■ The D.C. Circuit's recent decision in *Yesudian* established that the determination of whether an individual defendant can be considered an "employer" for purposes of the False Claims Act is a question of law, dependent on statutory interpretation rather than factual circumstances, particularly where, as here, material facts are undisputed. These undisputed facts establish that the corporation was plaintiff's employer, and that its affairs were conducted in a manner which precluded, as a matter of law, piercing of the corporate form to impose liability on the decedent's Estate under § 3730(h).

Accordingly, it is this 4th day of February, 2002,

ORDERED: that the defendant Estate's Motion for Reconsideration [dkt. # 275] is GRANTED. The Estate's motions to alter or amend the July 27 Order, or to certify the question to the Court of Appeals [dkt. # 262, 263] are DENIED as moot. It is further

ORDERED: that plaintiff's claim against the Estate of Dr. John A. Jamieson under 31 U.S.C.A. § 3730(h) is dismissed; and it is further

ORDERED: that a status conference to discuss further administration of this case shall be held on *Tuesday, February 19, 2002* at *10:00 AM* in *Courtroom No. 3.*

---

**5.** There is some suggestion that the corporation may be judgment-proof. *See* Defendant Estate's Statement of Material Facts As to Which There is No Genuine Issue, ¶ 11. However, there is no allegation or evidence that this is the result of undercapitalization or other fraud by the decedent, making plaintiff's potential inability to execute a monetary judgment against the corporation a condition created by the underlying, time-honored purpose of the law limiting liability by incorporation, rather than an inequity.